USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/19

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FLORA GILLESPIE, et al.,                          :
                                                  :
                        Plaintiffs,               :
                                                  :     1:16-cv-9390-GHW
        -against-                                 :
                                                  :     MEMORANDUM OPINION
ST. REGIS RESIDENCE CLUB, NEW YORK                :          AND ORDER
INC., et al.,                                     :
                                                  :
                        Defendants.               :
-----------------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Plaintiffs own fractional interests in designated "Club Units" in the building at the corner of Fifth Avenue and East Fifty-Fifth Street in Manhattan that also houses The St. Regis Hotel. Plaintiffs have the right to rent their Club Units when they do not occupy them. Plaintiffs have the option, but not the obligation, to rent their units using the hotel's reservation management system. The governing agreements permit the hotel to prioritize placing potential guests in its rooms, rather than in Club Units owned by Plaintiffs. Plaintiffs have sued the owners of the hotel and others, claiming that the hotel's failure to give rentals of Plaintiffs' property equal priority to the hotel's own rooms has unjustly enriched the hotel and others. Because Plaintiffs have not plausibly pleaded that the defendants benefitted at their expense, and because it is not unjust to permit the hotel to keep the money it earned from renting its own rooms, Defendants' motion to dismiss Plaintiffs' unjust enrichment claims is GRANTED.

## II. BACKGROUND[1]

### A. The St. Regis Residence Club Offering

Plaintiffs are the purchasers of fractional timeshare interests in a landmark building on the corner of Fifth Avenue and East 55th Street in Manhattan. Second Am. Compl. ("SAC") (Dkt. No. 96) ¶ 1. The building is the site of the St. Regis New York Hotel (the "St. Regis"). *Id.* In 2006, Starwood Hotels and Resorts Worldwide, LLC ("Starwood"), as part of a joint venture with other entities, filed a condominium map on the St. Regis, dividing it into four components: the "Hotel Unit," the "Retail Unit," the "Suite Units," and the "Club Units." *Id.* ¶ 3. The Retail Unit is primarily a high-end retail space at the intersection of 5th Avenue and 55th Street. *Id.* That space alone recently sold for $700 million. *Id.* The "Hotel Unit" consists of all floors of the hotel other than floors 8 through 11. *Id.* St. Regis

The Suite Units and the Club Units are each "governed by an offering plan filed with the New York State Department of Law." *Id.* ¶ 4. The offering is known as the Fifth and Fifty-Fifth Residence Club (the "Residence Club"). *Id.* ¶ 1. The St. Regis Residence Club, New York, Inc. is the Residence Club Sponsor (the "Sponsor"). *Id.* ¶ 18.

### B. The Rental Program

Plaintiffs' unjust enrichment claims center on the rental of interests in Club Units. Pursuant to the governing offering plan (the "Offering Plan"), purchasers of interests in Club Units, such as Plaintiffs, have the right to rent out their Club Units when they are not otherwise in use. SAC Ex. 6, Dkt. Nos. 96-6 to 96-27. The Offering Plan states

---

[1] Unless otherwise noted, the facts are taken from the second amended complaint and the exhibits thereto. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citations omitted)). The alleged facts are accepted as true for the purposes of this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> Club Members may rent their Club Week(s) using the rental program operated by Club Manager, using a third party unrelated to Club Manager or may rent their Club Week(s) themselves. Only Fixed Time or Floating Time reserved as a full Club Week may be rented. A Club Member may rent up to fourteen (14) days of time associated with their Club Interest each Use Year using the rental agent affiliated with Club Manager.
>
> THE ABILITY OF A CLUB MEMBER TO RENT CLUB WEEKS WILL BE EXTREMELY LIMITED. CLUB MEMBERS WILL BE COMPETING WITH SPONSOR FOR THE RENTAL OF CLUB WEEKS. CLUB MEMBERS SHOULD NOT PURCHASE A CLUB INTEREST WITH ANY EXPECTATION OF RENTAL FOR CLUB WEEKS RESERVED AS PART OF THE CLUB INTEREST.

Offering Plan at 90 (emphasis in original). The risk factors contained in the Offering Plan underscored that purchasers should not acquire interests in Club Units with the expectation that they could be rented at a profit, and that their rentals would compete with rentals of the Sponsor's unsold units. *Id.* at 3 ("The purchase of a Club Interest should be based upon its value as a vacation experience, . . . and not considered for purposes of acquiring an appreciating investment or with an expectation that the Club Interest may be rented or resold at a profit. . . . Any Club Member attempting to rent or resell a Club Interest would have to compete, at a substantial disadvantage, with Sponsor in the rental and sale of its Unsold Club Interests.").

While Plaintiffs acknowledge that the Offering Plan gave Sponsor the right to rent some interests in Club Units, they allege that "the Club Offering Plan granted Defendants a very limited right to rent . . . ." SAC ¶ 145. Plaintiffs allege that Sponsor is instead renting retained Club Units on a massive scale—"not only the 217 nights that might be allowed in the Club Offering Plan, but also all 28 nights in each of the 98 Club Interests they own, which equals 2,744 nights." *Id.* Plaintiffs assert that the massive rental of unsold, retained Club Interests violated their reasonable expectations under the parties' contract. That assertion undergirds Plaintiffs' claims against Sponsor for breach of contract, which are not challenged in this motion. *Id.* ¶ 194.

3

Plaintiffs' unjust enrichment claims are based upon actions taken by Defendants Starwood Hotel and Resorts Worldwide, LLC ("Starwood"), and its wholly-owned subsidiary, St. Regis New York Operating LLC, the operator of the hotel ("Operator," and, together with Starwood, the "Hotel")[2], in connection with the rental of interests in Club Units. *Id.* ¶¶ 5, 148-151, 207-211. According to the complaint, in April 2012, "the Hotel entered into a formal agreement with the Sponsor through the Club Manager, wherein the Hotel would pay approximately $2.7 million annually to Sponsor in exchange for allowing the Hotel to operate the members rental program in a way which greatly suppressed rentals of fractional units – *both* unsold Sponsor Inventory *and* members [sic] inventory." *Id.* ¶ 148 (emphasis added). "The April 2012 Agreement released all available nights in the Sponsor's members rental program (both Sponsor's unsold Club Interests and members' Club Units who had joined the member rental program) to the Hotel. The Hotel would then rent unsold Club Interests if it was fully booked for any given night." *Id.*

The 2012 agreement was replaced by a new agreement in September 2015. *Id.* ¶ 148. The new agreement "also gives to the Hotel the task of renting out any nights that Plaintiffs or other owners place in the rental pool. But under the agreement, the Hotel has no obligation whatsoever to rent *any* units in the Club—whether those below to the Sponsor or any other owner. The Hotel is thus free to act in its own best interests and focus exclusively on renting out its own rooms each night." *Id.* ¶ 150. Plaintiffs describe these agreements as "non-parity" agreements, "because the Hotel has no obligation to maintain parity in occupancy between itself and the Club." *Id.*

According to Plaintiffs, this arrangement has unjustly enriched Starwood and Marriott International, Inc. ("Marriott" and, together with Starwood, the "Hotel Owner Defendants") at

---

[2] The second amended complaint defines Starwood and Owner collectively as (the "Hotel"). SAC ¶ 148. The Court uses that convention here. In doing so, the Court does not condone the second amended complaint's continued use of group pleading.

4

Plaintiffs'" expense.[3] "Specifically, during the period from 2007 to the present: (a) The Hotel Owner Defendants have unjustly profited by selling more room nights as a result of the non-parity agreements . . . [and] (b) the Hotel Owner Defendants have profited by over $3.1 million per year from not having to pay the Plaintiffs for taking their Club Units off of the rental market." *Id.* ¶ 208. Starwood was additionally unjustly enriched according to Plaintiffs "by achieving a higher purchase prices for the St. Regis hotel when the hotel was sold to Marriott . . . in 2016 (since the value of a hotel was inflated because of the higher net revenue the hotel receives as a result of the secret non-parity agreements)." *Id.* ¶ 209.

Finally, Plaintiffs allege that "Starwood Vacation Ownership, Inc. (now Vistana Vacation Ownership, Inc.) was unjustly enriched at Plaintiffs' expense by at least $2.7 million per year by accepting payments from Starwood in exchange for allowing Starwood Hotels & Resorts to have full control over renting fractional interests . . . ." *Id.* ¶ 210.

As relief, Plaintiffs seek the equitable remedy of disgorgement. They claim that "equity and good conscience require that all sums improperly obtained by Defendants Starwood Hotels and Resorts Worldwide LLC, Marriott International, and Vistana Vacation Ownership, as a result of these unjust and secret non-parity agreements be disgorged and paid to Plaintiffs." *Id.* ¶ 211. Given the nature of the conduct that they claim to be unjust, Plaintiffs ask (1) the seller of the hotel to pay them a portion of the sale price for a hotel that Plaintiffs have never owned, (2) the manager of a reservation system to pay them the value of a contract to run a reservation system that Plaintiffs do not own or operate, (3) the same manager to pay them money for a contract that does not exist, and (4) the Hotel to pay them a portion of the rental income for hotel rooms in which Plaintiffs do not have an interest.

---

[3] Marriott acquired the hotel from Starwood in 2016. *Id.* ¶ 209.

## III.   PROCEDURAL HISTORY

In an opinion dated September 28, 2018 (the "Prior Opinion"), the Court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' first amended complaint. Dkt. No. 91. In its decision, the Court permitted a number of Plaintiffs' claims to proceed, but dismissed Plaintiffs' unjust enrichment claims in their entirety. The Court granted Plaintiffs leave to amend those claims, and they did so in the second amended complaint. Dkt. No. 96. Defendants moved to dismiss only the unjust enrichment claims asserted in the second amended complaint. Dkt. No. 103. That motion is fully briefed, and for the reasons described below, it is granted in its entirety.

## IV.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

In addition to the facts alleged in the complaint, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . ." *ATSI*, 493 F.3d at 98. Courts may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

## V. DISCUSSION

### A. Plaintiffs' Unjust Enrichment Claim Must Be Dismissed (Seventh Count)

Plaintiffs' unjust enrichment claim is inadequately pleaded. "The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (quoting *Paramount Film Distrib. Corp. v. State of New York,* 30 N.Y.2d 415, 421 (1972)). "A plaintiff must show 'that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Id.* (quoting *Citibank, N.A. v. Walker,* 787 N.Y.S.2d 48 (2d Dep't 2004)); *see also Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the

7

plaintiff's expense; and 3) that 'equity and good conscience' require restitution."). "A cause of action alleging unjust enrichment requires the plaintiff to set forth that the defendant possessed property or assets of the plaintiff." *Swartz v. Swartz*, 44 N.Y.S.3d 452, 465 (2d Dept. 2016).

Plaintiffs' renewed unjust enrichment claims suffer from several deficiencies, but one is sufficient to defeat the claims as pleaded—Plaintiffs do not adequately plead that Defendants benefitted at Plaintiffs' expense. In particular, Defendants did not take possession of property or assets of Plaintiffs as a result of the conduct alleged. For example, Plaintiffs do not plausibly plead an entitlement to be paid a portion of the purchase price paid to Starwood by Marriott for the hotel. To the extent that Starwood benefitted from the low vacancy rate alleged to have resulted from the "non-parity" agreements, it was not at the expense of Plaintiffs. Plaintiffs own interests in Club Units, not the hotel, so understandably do not plausibly plead that they were legally entitled to be paid any portion of the purchase price for the hotel. To the extent that Starwood benefited from this arrangement, it was not at Plaintiffs' expense.

Similarly, Plaintiffs do not plausibly allege that they were entitled to any portion of the $2.7 million in annual payments to the Hotel to run the reservation management system for Club Units. They own interests in Club Units; they do not run a reservation system, so again, understandably, do not plausibly plead that they have an entitlement to payments made to the Hotel to run such a system. The allegation that Defendants "have profited by over $3.1 million per year from not having to pay the Plaintiffs for taking their Club Units off of the rental market so Defendants benefit at Plaintiffs' expense" also does not state a claim. Plaintiffs' claim rests on the deprivation of an opportunity to enter into a hypothetical agreement, but they plausibly plead no entitlement to such a deal with the Hotel.

Similarly, the complaint does not allege that the Hotel Defendants took property of Plaintiffs as a result of the "non-parity" agreements. The Hotel rented hotel rooms. Plaintiffs do not allege

8

that owners of Club Units who rented pursuant through the Hotel failed to receive payment for those rentals. Nor do they allege that rooms owned by Sponsor were rented through the rental program more than those of Plaintiffs.

Plaintiffs complain instead that the Hotel's "non-parity" agreements resulted in a reduction of Plaintiffs' opportunity to compete with the Hotel. But, again, they plead no plausible basis for an entitlement to rent their Club Interests at parity with the Hotel of which they were deprived as a result of Defendants' conduct. Plaintiffs do not allege that the Offering Plan or any other agreement governing their acquisition of interests in Club Units required that their club suites be rented at parity with rooms owned by the Hotel. Nor does the complaint allege that Plaintiffs are required to rent their interests through the rental program operated by the Hotel. The Offering Plan makes very clear that they are not required to do so. Offering Plan at 90 (describing three ways in which holders of interests in Club Units could rent their time: "using the rental program operated by Club Manager, using a third party unrelated to Club Manager or may rent their Club Week(s) themselves."). Plaintiffs do not plead that any of them in fact participated in the rental program and that they lost rental income as a result.

In sum, Plaintiffs do not plausibly allege that the defendants named in their unjust enrichment claims are in the possession of property or assets rightfully belonging to Plaintiffs, or that any benefit that those defendants may have obtained was at Plaintiffs' expense.

The same deficiencies also lead to the conclusion that Plaintiffs' pleading does not satisfy the third element of unjust enrichment claim. Plaintiffs seek to recover money that these defendants obtained for selling, letting or using their own assets. Given that Plaintiffs plead no entitlement to those assets, it is not against equity and good conscience to permit these defendants to retain what is sought to be recovered—the fruits of their own investments.

Moreover, the "non-parity" provisions of the 2012 and 2015 agreements were contained in agreements entered into between the Hotel and the Sponsor. While Plaintiffs may not like the terms of the agreement that was negotiated by Sponsor with the Hotel, the Hotel acted in a manner consistent with its contractual rights. The second amended complaint does not adequately allege that by doing so, it was acted inequitably. For these reasons, Plaintiffs' unjust enrichment claims are dismissed.

### B. Plaintiff's Unauthorized Amendments Are Stricken

In the Prior Opinion, the Court granted Plaintiffs leave to replead their unjust enrichment claim. They did so. They also made a series of unauthorized additional amendments. Those additional amendments are stricken because they were made in violation of Rule 15 of the Federal Rules of Civil Procedure. At this stage of this case, Plaintiffs may amend the complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Court's Prior Opinion did not authorize the incremental amendments, and Defendants have not consented to them. Accordingly, they are stricken.

## VI. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted. Count Seven is dismissed without prejudice. Plaintiffs are granted leave to replead Count Seven. Regardless of whether they seek to amend Count VII, Plaintiffs are directed to file a third amended complaint that omits the unauthorized amendments. Any amended complaint must be filed no later than 14 days after the date of this order.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 103. The Clerk of Court is also directed to remove Vistana Signature Experiences, Inc., ILG, Inc., and Iris Merger Sub, Inc. from the caption of this case because no claims are asserted against them in the second amended complaint.

SO ORDERED.

Dated: September 29, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge