3.2 Place of Meetings. Meetings of Unit Owners shall be held at the Property, at the principal office of the Condominium or at such other place in the Borough of Manhattan as may be designated from time to time by the Condominium Board.

3.3 Special Meetings. The President or the Vice President of the Condominium shall call a special meeting of Unit Owners if so directed by resolution of the Condominium Board or upon a petition signed and presented to the Secretary of the Condominium by Unit Owners owning Units representing 50% or more of the Common Interests of all of the Units. Each such resolution or petition shall state, in reasonable detail, the purposes for calling such meeting.

3.4 Notice of Meetings and Actions Taken. Notice of each annual or special meeting of Unit Owners shall be given by the Secretary of the Condominium to all Unit Owners of record entitled to vote thereat, at their address at the Condominium (or at such other address as any Unit Owner has designated by notice in writing to the Secretary of the Condominium at least 15 business days prior to the giving of notice of the applicable meeting). Each such notice shall state the purposes of the meeting and the time and place where it is to be held, and no business shall be transacted at such meeting except as stated in the notice. All notices hereunder shall be given by personal delivery, mail, nationally recognized overnight courier or telecopy, at least 10 business days prior to the date fixed for the meeting. However, if the business to be conducted at any meeting of the Unit Owners shall include consideration of a proposed amendment to the Declaration or to these Condominium By-Laws, the notice of such meeting shall be given to all Unit Owners in the manner provided above at least 30 days prior to the date fixed for such meeting and such notice shall be accompanied by a copy of the text of such proposed amendment.

3.5 Lack of Quorum. If any meeting of Unit Owners cannot be held because a quorum is not present, the Unit Owners who are present at such meeting, either in person or by proxy, may act by majority vote to either: (a) adjourn the meeting from time to time until a quorum exists; or (b) reconvene the meeting at a time (specified on not less than three business days' notice, by personal delivery, nationally recognized overnight courier or telecopy, to the absent Unit Owners) when, provided that the Hotel Unit Owner is present in person or by proxy at such reconvened meeting, no further requirement with respect to a quorum shall apply.

3.6 Order of Business. The order of business at all regular meetings of Unit Owners shall be as follows:

   (a) Call to order.

   (b) Roll call.

   (c) Proof of notice of meeting.

   (d) Reading of minutes of preceding meeting.

   (e) Reports of officers.

   (f) Reports of Board Members.

(g) Reports of committees.

(h) Election of inspectors of election (when so required).

(i) Election of Board Members.

(j) Unfinished business.

(k) New business.

(l) Adjournment.

3.7    Title to Units. Title to Units may be taken by any individual, corporation, partnership, limited liability company, association, trust, fiduciary or other entity, or any two or more of such owners as joint tenants, tenants in common or tenants by the entirety, as may be appropriate.

3.8    Voting.

3.8.1    Each Unit Owner, or a person designated by such Unit Owner to act as proxy on its behalf and who need not be a Unit Owner, shall be entitled to cast the votes appurtenant to such Unit as set forth herein and in the Declaration at all meetings of Unit Owners and at all joint meetings of Unit Owners. The designation of any such proxy shall be made in a signed and dated writing to the Secretary of the Condominium and shall be revocable at any time by written notice actually delivered to such Secretary by the Unit Owner who had made the designation; provided, however, that no designation to act as a proxy shall be effective for a period in excess of six months (except that the designation of a Permitted Mortgagee to act as the proxy of its mortgagor shall be effective until duly revoked). A fiduciary shall be the voting member with respect to any Unit owned in a fiduciary capacity.

3.8.2    If two or more persons or entities own a Unit, they shall designate one person or entity amongst them to vote the entire Common Interest appurtenant to their Unit in a writing given to the Secretary of the Condominium, and the vote of such designee shall be binding upon such designors. Failing such a designation, all of such persons or entities shall mutually vote such Common Interest under one ballot, without division, and the concurrence of such persons or entities shall be conclusively presumed if any one of them purports to vote such Common Interest without protest being made contemporaneously to the party presiding over the meeting at which such vote is taken. If protest is made, the Common Interest appurtenant to such Unit shall be counted solely for the purpose of determining whether a quorum is present for such voting.

3.8.3    Neither the Condominium Board nor its designee shall be entitled to vote the interest appurtenant to any Unit owned by the Condominium Board or such designee, and the Common Interest of any such Unit shall be excluded from the total Common Interests when computing the interests of Unit Owners for quorum and voting purposes.

- 15 -

3.8.4    Except as otherwise set forth herein or in the Declaration, at all meetings of Unit Owners, each Unit Owner (or its proxy) entitled to vote thereat (including the Suite Sponsor, the Club Sponsor or their respective designee(s) with respect to Unsold Units) shall be entitled to cast one vote for each .0001% (rounded off to the nearest .0001%) of Common Interest attributable to its Unit or Units including without limitation, for each Board Member to be elected, as applicable, in accordance with the terms of Article 2 hereof.

3.8.5    Whenever a particular percentage of Common Interest must be reached for voting purposes and such required percentage is described in terms of a percentage of a particular class of Unit Owners as a group (e.g., X% of all Suite Unit Owners), as opposed to a percentage of all Unit Owners, such required percentage shall mean a percentage in terms of the total Common Interests attributable to the particular class of Unit Owners and not the percentage of Common Interests attributable to all Unit Owners.

3.9    Majority of Unit Owners.  Except as may otherwise be provided by Law, as used in these Condominium By-Laws and in the Declaration, the term "Majority of Unit Owners" means those Unit Owners having more than 50% of the total authorized votes of all Unit Owners (determined in accordance with the provisions of Section 3.8), who are present in person or by proxy and voting at a duly constituted meeting at which a quorum is present or is not required.

3.10    Quorum.  Except as otherwise expressly provided in these Condominium By-Laws, the presence in person or by proxy of: (i) Unit Owners owning Units to which more than 50% of the aggregate Common Interests attributable to all Units are appurtenant; and (ii) the Hotel Unit Owner, shall constitute a quorum at all meetings of Unit Owners.

3.11    Majority Vote.  Except where otherwise provided by Law, the Declaration or these Condominium By-Laws, at all meetings of Unit Owners, the affirmative vote of a Majority of Unit Owners shall be binding upon all Unit Owners for all purposes.

## ARTICLE 4

## OFFICERS

4.1    Designation.  The principal officers of the Condominium shall be a President, Vice President, and Secretary/Treasurer thereof, all of whom shall be elected by the Condominium Board.  The Condominium Board may elect more than one Vice President, or an Assistant Treasurer or Assistant Secretary and such additional officers as in its judgment may be desirable.  Unless prohibited by Law, any two or more offices of the Condominium may be held by the same person.  None of the officers of the Condominium need be Unit Owners or have any interest therein until the first organizational meeting of the Condominium Board, which shall be held within 90 days after the First Annual Meeting.  Thereafter, the President of the Condominium must be a Board Member.

4.2    Election of Officers.  The officers of the Condominium shall be elected annually by the Condominium Board at the organizational meetings thereof and at any other meeting as may be required to fill a vacancy, and shall serve at the pleasure of the Condominium Board;

except that the initial officers of the Condominium shall be elected by the First Board and shall hold office at the pleasure of such First Board and until their successors are elected.

4.3    Resignation and Removal of Officers. Any officer may resign at any time by written notice given in accordance with the terms of Section 5.1 of these Condominium By-Laws to the Condominium Board; such resignation shall take effect at the time specified and, unless specifically requested by the resigning officer, acceptance of such resignation shall not be necessary to make it effective. Except as otherwise required by these Condominium By-Laws with respect to designation of officers of the Condominium, upon the affirmative vote of a majority of the Board Members present in person or by proxy at a regular meeting of the Condominium Board, or at a special meeting of the Condominium Board called for such purpose, at which a quorum is present or is not required pursuant to Section 2.11.2, any officer may be removed, either with or without cause, and his or her successor shall be elected or designated as the case may be.

4.4    President. The President of the Condominium shall be the chief executive officer of the Condominium and shall preside at all meetings of Unit Owners and of the Condominium Board. The President shall have all of the general powers and duties which are incident to the office of president of a stock corporation organized under the Business Corporation Law of the State of New York, including, but not limited to, the power to appoint committees from among Unit Owners from time to time as such President, in his or her discretion, may decide are appropriate to assist in the conduct of the affairs of the Condominium. From and after the first organizational meeting of the Condominium Board after the First Annual Meeting, the President of the Condominium must be a Board Member.

4.5    Vice President. The Vice President of the Condominium shall take the place of the President under whom he or she serves and shall perform the duties of the President whenever the President shall be absent or unable to act. If both the President and the Vice President of the Condominium are unable to act, the Condominium Board shall appoint some other Board Member to act in the place of such President and Vice President on an interim basis. The Vice President shall also perform such other duties as, from time to time, shall be imposed by the Condominium Board or by the President.

4.6    Secretary/Treasurer. The Secretary/Treasurer of the Condominium shall keep the minutes of the meetings of the Unit Owners and of the Condominium Board. The Secretary/Treasurer shall have charge of such books and papers as the Condominium Board shall direct and, in general, shall perform all of the duties incident to the office of secretary of a stock corporation organized under the Business Corporation Law of the State of New York. In addition, the Secretary/Treasurer of the Condominium shall have the care and custody of the funds and securities of the Condominium, and shall be responsible for keeping full and accurate financial records and books of account thereof showing all receipts and disbursements necessary for the preparation of all required financial data. The Treasurer shall be responsible for the deposit of all funds and other securities in the name of the Condominium Board (or in the name of the Managing Agent or manager appointed by the Condominium Board) in such depositories as may from time to time be designated by such Board and shall, in general, perform all of the

- 17 -

duties incident to the office of treasurer of a stock corporation organized under the Business Corporation Law of the State of New York.

4.7     Execution of Documents.  All agreements, contracts, deeds, leases, checks and other instruments of the Condominium shall be executed by the President or Vice-President, acting alone, or by any other two officers thereof or by such other person or persons as may be designated by the Condominium Board.  In addition to the foregoing, the Condominium Board may authorize the Managing Agent to execute checks, provided that the expenditures, and the Managing Agent's paying for same, have been approved in advance by resolution of the Condominium Board or have been authorized by two officers of the Condominium.

4.8     Compensation of Officers.  Except as otherwise determined by the Condominium Board, no officer shall receive any compensation for acting as such.

4.9     Liability of Officers.

4.9.1     To the extent permitted by Law, no officer of the Condominium shall have any personal liability with respect to any contract, act or omission of the officers in connection with the affairs or operation of the Condominium (except in their capacities as Unit Owners, as applicable).  To the extent permitted by Law, officers shall have no liability to Unit Owners except that an officer shall be liable for his or her own bad faith or willful misconduct.  All Unit Owners shall severally, to the extent of their respective interests in their Units and their appurtenant Common Interests, indemnify, defend and hold harmless each officer against any liability or claim except those arising out of such officer's own bad faith or willful misconduct.

4.9.2     None of the officers of the Condominium shall be liable for either: (i) any failure or interruption of any utility or other services to be obtained by, or on behalf of, any such officer or to be paid for as a Common Expense, except when any such failure or interruption is caused by the acts of bad faith or willful misconduct of such officer; or (ii) any injury, loss or damage to any individual or property, occurring in or upon either a Unit or any Common Element, which is either: (a) caused by the elements, by any Unit Owner or by any other individual, (b) resulting from electricity, or from water, snow or ice that may leak or flow from a Unit or any portion of any Common Element, or (c) arising out of theft or otherwise; except in each case when caused by the acts of bad faith or willful misconduct of such officer.

## ARTICLE 5

## NOTICES

5.1     Notices.  Except as otherwise provided in these Condominium By-Laws:  (a) all notices required or desired to be given hereunder to the Condominium Board shall be in writing and either delivered in person or sent by registered or certified mail, return receipt requested, or by nationally recognized overnight courier service to the principal office of the Condominium (or to such other address as the Condominium Board may designate from time to time by notice in writing to all Unit Owners and to all Permitted Mortgagees) and a duplicate shall be sent in like manner to the Managing Agent; (b) all notices required or desired to be given hereunder to

any Unit Owner shall be in writing and either delivered in person or sent by first class mail or by registered or certified mail (return receipt requested), or by nationally recognized overnight courier service to the address of such Unit Owner at the Property or to such other address as may have been designated by such Unit Owner from time to time in writing to the Condominium Board; and (c) all notices required or desired to be given hereunder to Permitted Mortgagees shall be in writing and either delivered in person or sent by first class mail or by registered or certified mail, return receipt requested, or by nationally recognized overnight courier service to their respective addresses, as may have been designated by such Permitted Mortgagees from time to time in writing to the Condominium Board. All notices shall be deemed to have been given when delivered in person (to the extent permitted herein) or three days after deposit in a depository maintained by the U.S. Postal Service in a postage prepaid sealed wrapper, or the first business day after deposit with an overnight courier service, as the case may be, except that notices of change of address shall be deemed to have been given when received.

     5.2    Waiver of Service of Notice. Whenever any notice is required to be given by law, the Declaration or these Condominium By-Laws, a waiver thereof in writing, signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed the equivalent thereof.

## ARTICLE 6

## OPERATION OF THE CONDOMINIUM

     6.1    Determination of General Common Expenses and Fixing of General Common Charges.

     6.1.1    The Condominium Board shall, from time to time, but at least annually, prepare or cause to be prepared a budget setting forth its projections of the costs and expenses associated with the repair, maintenance, replacement, restoration, care, upkeep and operation of, and any alteration, addition or improvement to, the Common Elements, the provision of services to Unit Owners and the business and affairs of the Condominium (the "General Common Expenses") for the next fiscal year and will allocate and assess charges (such charges, together with all such other amounts denominated or payable as General Common Charges in or under the Condominium Documents, being collectively, the "General Common Charges") among: (a) the Suite Units; (b) the Club Units; (c) the Hotel Unit; and (d) the Retail Unit. Each such Unit Owner or group of Unit Owners (as set forth in the preceding sentence), as the case may be, will be assessed General Common Charges to meet its/their allocated share of General Common Expenses in accordance with Exhibit B annexed hereto and made a part hereof (the "Cost Allocation Schedule"), with the General Common Charges allocated to the Suite Units (as a group) and the Club Units (as a group) being further allocated, subject to the Cost Allocation Schedule and Section 6.1.6 below or as otherwise provided in the Condominium Documents, among each Unit within such separate group generally in proportion to the applicable Unit Owner's Unit's proportionate Common Interest among all Suite Units or Club Units, as the case may be. Each Commercial Unit Owner will be assessed General Common Charges to meet the share of only those General Common Expenses allocated to such Commercial Unit by the Condominium Board in accordance with the Cost Allocation Schedule.

The Condominium Board shall advise all Unit Owners promptly in writing of the amount of General Common Charges payable by each of them and shall furnish copies of each budget on which such General Common Charges are based to all Unit Owners and, if requested, to Permitted Mortgagees thereof.

6.1.2 The Condominium Board may, in its sole discretion, from time to time increase or decrease the amount of General Common Charges allocated to the Units and payable by the Unit Owners, and may modify its prior determination of the General Common Expenses for any fiscal year so as to increase or decrease the amount of General Common Charges payable for such fiscal year or portion thereof; however, no such revised determination of General Common Expenses shall have a retroactive effect on the amount of General Common Charges payable by Unit Owners for any period prior to the date of such new determination. However, a prior period's deficit may be included in General Common Charges for a subsequent period or levied from a special assessment levied against the Unit Owners.

6.1.3 The failure or delay of the Condominium Board to prepare or adopt a budget or to determine the General Common Expenses for any fiscal year or portion thereof shall not be deemed a waiver or modification in any respect of the covenants and provisions hereof or a release of any Unit Owner from the obligation to pay General Common Charges. In the event of such failure by the Condominium Board, the General Common Charges thereafter allocable to the Units until a new determination of General Common Charges is made shall be computed as set forth in the Condominium By-Laws. In such event, the General Common Charges that were computed on the basis of the General Common Expenses last determined for any fiscal year or portion thereof shall continue thereafter to be the General Common Charges payable by the Unit Owners until a new determination of the General Common Expenses can be made.

6.1.4 In addition to the foregoing duty to determine the amount of and to assess General Common Charges, the Condominium Board shall have the right to levy special assessments to meet the General Common Expenses (or a prior period's deficit, in accordance with subsection 6.1.2). All special assessments shall be levied against all Unit Owners in proportion to their respective obligations with respect to the applicable General Common Charges. The Condominium Board shall have all rights and remedies for the collection of special assessments as are provided herein for the collection of General Common Charges (including, without limitation, perfecting a lien against the defaulting Unit).

6.1.5 Except as otherwise provided in the Declaration or these Condominium By-Laws to the contrary, including, without limitation, with respect to any easement(s) granted pursuant to Article 15 of the Declaration, the excess of all rents, profits and revenues derived from the rental or use of any space or facility forming part of or included in any General Common Elements remaining after the deduction of any non-capital expenses paid or incurred in connection therewith shall be collected by the Condominium Board, as agent for and on behalf of all Unit Owners (in the case of any General Common Element), and shall constitute income of the Unit Owners. The foregoing shall not limit or curtail the rights of the Hotel Unit Owner with respect to any Hotel Limited Common Elements, nor shall it entitle any Unit Owner, other than the Hotel Unit Owner, to the rents, proceeds or profits of any portion of the Hotel Unit or Hotel Limited Common Elements (including, without limitation, the applicable portions of the

- 20 -

lobby, vitrines, and areas containing pay telephones and vending machines). Notwithstanding any provision contained in these Condominium By-Laws or in the Declaration to the contrary, in no event shall any rent, profit or revenue derived from the rental, licensing or use of any space in the Building be deemed to be derived from the rental, licensing or use of any floor slabs, ceilings or walls delineating or enclosing such space or the incidental use of any portion of any Common Elements appurtenant to such space.

      6.1.6     The Condominium Board shall periodically, but not more often than once per year, review the General Common Expenses to determine whether each category of Unit Owners is paying an appropriate share of the General Common Expenses. Such redetermination shall also be made if any Commercial Unit is subdivided, the use of the same is changed, or the owners of 50% or more in percentage Common Interests of all Units request such a redetermination (which request may be made periodically, but not more often than once during the first 3 years after the First Closing and then once during every five year period thereafter). If, as a result of a regular review, a redetermination based upon changed circumstances, or a redetermination requested by the Unit Owners, the Condominium Board cannot agree upon any decision or determination to be made, the same shall be submitted for arbitration in accordance with the terms of Article 11 of these Condominium By-Laws. Pending the resolution of the dispute, the Unit Owners in question shall continue to pay General Common Charges upon the allocations theretofore in force, and any variation in such General Common Charges based upon such resolution shall be retroactive to the date of the review, redetermination, or request for redetermination, as the case may be. In no event, however, shall any expenses incurred by the Condominium Board for creating or increasing reserves, whether for Repairs or otherwise, be included when computing or redetermining the allocations of the General Common Expenses. In addition to basing allocations of General Common Expenses on Common Interests, the Condominium Board may also make allocations and assessments of General Common Expenses based upon submetering, "key" count, contract allocations and usage (both projected and actual) or other reasonable methods so long as such allocations are reasonable under the circumstances and are in accordance with Law. Notwithstanding the foregoing, allocations of General Common Charges which are based on "key" count, proportionate Common Interest and/or metering/submetering shall not be subject to challenge in Arbitration.

      6.2     Payment of General Common Charges

      6.2.1     All Unit Owners shall be obligated to pay to the Condominium Board General Common Charges assessed by the Condominium Board pursuant to the provisions of Section 6.1 at such time or times as the Condominium Board determines. Unless otherwise determined by the Condominium Board, General Common Charges shall be payable monthly, in advance, on the first day of each month.

      6.2.2     No Unit Owner shall be liable for the payment of any part of the General Common Charges assessed against such Unit Owner's Unit subsequent to a permissible sale, transfer or other conveyance by it (made in accordance with these Condominium By-Laws) of such Unit, together with its appurtenant Common Interest, except as expressly provided herein. Any Unit Owner may, subject to the terms and conditions of these Condominium By-

Laws, convey its Unit, together with its appurtenant Common Interest, without consideration, to the Condominium Board or its designee, on behalf of all Unit Owners, and in such event (except as hereinafter set forth), be exempt from General Common Charges thereafter accruing, provided that: (a) such Unit is free and clear of liens and encumbrances other than the statutory lien for unpaid General Common Charges (provided that no amounts are owing under any such lien); and (b) no violation of any provision of the Declaration, these Condominium By-Laws or the Rules and Regulations then exists with respect to such Unit. However, in no event may a Unit Owner exempt itself from liability for General Common Charges by waiving use of any of the Common Elements or services or by abandoning its Unit. A purchaser of a Unit shall be liable for the payment of General Common Charges accrued and unpaid against such Unit prior to its acquisition thereof, except that, to the extent permitted by Law, a Permitted Mortgagee acquiring title to a Unit at a foreclosure sale shall not be liable for, and such Unit shall not be subject to, a lien for the payment of General Common Charges assessed against such Unit subsequent to the recording of such Permitted Mortgage and prior to the acquisition of title to such Unit by such mortgagee; provided the such Permitted Mortgagee meets the requirements of the last sentence of subsection 6.3.1 hereof. However, in the event of a foreclosure of a Unit by a Permitted Mortgagee (whether by sale, deed in lieu of foreclosure or otherwise) or by the Condominium Board of its lien on any Unit for unpaid General Common Charges, if the net proceeds of the foreclosure sale actually received (after deduction of all legal fees, advertising costs, brokerage commissions and other costs and expenses incurred in connection therewith) are insufficient to satisfy the defaulting Unit Owner's obligations, or if a Unit is acquired by a mortgagee or purchaser in foreclosure, the owner of such Unit prior to the foreclosure sale shall remain liable for the payment of all unpaid General Common Charges which accrued prior to such sale, as provided in these Condominium By-Laws.

      6.2.3    Notwithstanding the provisions of subsection 6.2.1, any Unit Owner that is a foreign government, a resident representative of a foreign government or such other person or entity otherwise entitled to the immunities from suit enjoyed by any foreign government (*i.e.,* diplomatic or sovereign immunity) shall deposit and maintain at all times with the Condominium Board an amount equal to the General Common Charges for such Unit for a period of two (2) years as security for the faithful observance by such Unit Owner of the terms, provisions and conditions of these Condominium By-Laws. In the event that such Unit Owner defaults in respect of the terms, provisions and conditions of these Condominium By-Laws, the Condominium Board may use, apply, or retain the whole or any part of the security so deposited to the extent required for the payment of any General Common Charges or any other sum as to which Unit Owner is in default; and such Unit Owner shall promptly replenish such amount.

      6.2.4    Notwithstanding the foregoing provisions regarding the discretion of the Condominium Board to establish budgets and assess General Common Charges, all decisions with respect to the costs and expenses in connection with the operation, care, upkeep and maintenance of, and the making of Alterations to, and Repairs of, the Hotel Unit and the Hotel Limited Common Elements, as well as other expenses deemed necessary by the Hotel Unit Owner to be incurred Building-wide (or throughout the guest-room portions of the Hotel Unit as well as the Suite Units and Club Units) in connection with the operation of a hotel or availability of hotel services in the Building and/or in order to maintain the Hotel Flag Standards (for example, by way of illustration only and without requiring or prohibiting the Hotel Unit Owner

to provide or from discontinuing the same from time to time, ancillary services such as minor repair (but not replacement) of building standard carpet, curtain and drapes; replacement of building standard light bulbs; repair and replacement of building standard faucets and shower heads; minor repair (but not replacement) of building standard furnishings; restocking of building standard china, glassware and silverware; repair and replacement of building standard guest phones; and certain other such maintenance services provided on equal availability to the Hotel Unit, the Suite Units and the Club Units (subject to right to assess a particular Unit Owner, in appropriate circumstances, additional charge to reflect any abuse of such service)) will be made exclusively by the owner of the Hotel Unit. Such determinations may include, at the discretion of the Hotel Unit Owner include any modified, increased (or, subject to the provisions of Section 15.2 of the Declaration, decreased) service and/or maintenance levels, and/or add new service and/or maintenance features, to the Hotel Unit and/or Hotel Limited Common Elements or otherwise (as aforesaid). The Hotel Unit Owner shall, at least annually, prepare a budget setting forth its projections of the costs and expenses to be incurred by or for the Hotel Unit Owner in connection with the operation, care, upkeep and maintenance of, and the making of Alterations to, and Repairs of and insuring, the Hotel Limited Common Elements, and/or, to the extent the same are also accessible to or used by the Suite Unit Occupants and Club Unit Occupants at no per-use charge, the Hotel Unit, as well as other expenses of the Hotel Unit Owner in providing services (for which there is no per-use charge) on a Building-wide basis or throughout or for the benefit of the guest-room portions of the Hotel Unit as well as the Suite Units and Club Units (and the Occupants thereof) in connection with the operation of a hotel in the Building and/or in order to maintain the Hotel Flag Standards (such costs and expenses being referred to in the Condominium Documents as "Allocable Hotel Expenses"); and shall periodically invoice the Condominium Board for such expenses incurred or to be incurred with respect thereto. Each Unit Owner shall pay to the Condominium Board its allocated share of the Allocable Hotel Expenses which allocation shall be made by the Condominium Board in accordance with the Cost Allocation Schedule. Such amounts payable to the Condominium Board shall be deemed to be included in General Common Charges, shall be collected by the Condominium Board and the Condominium Board shall have, and shall diligently and promptly as agent for the owner of the Hotel Unit or its designee exercise, any and all rights and remedies for the collection of such charges as are provided herein for the collection of General Common Charges. In addition, the owner of the Hotel Unit shall have the right of offset against the Condominium Board in respect of any amounts payable to it in respect of the costs and expenses of such shared areas and services which are not collected by the Condominium Board and paid to the owner of the Hotel Unit or its designee. Any dispute regarding the Allocable Hotel Expenses shall be resolved by Arbitration as set forth in Article 11 of these Condominium By-Laws; provided, however, that allocations of Allocable Hotel Expenses which are based on "key" count, proportionate Common Interest and/or metering/submetering shall not be subject to challenge in Arbitration.

    6.3    Default in Payment of General Common Charges;
           Lien for Unpaid General Common Charges; Other Remedies.

        6.3.1    Except to the extent prohibited by Law, the Condominium Board, on behalf of all Unit Owners, shall have a lien for General Common Charges unpaid by any Unit Owner, together with interest thereon, on all Units owned by such Unit Owner. Such lien for

666

General Common Charges shall be subordinate only to liens for real estate taxes and, to the extent required by Law, to prior recorded Permitted Mortgages on such Units which are first mortgages of record.

6.3.2    In the event any Unit Owner fails to make payment of General Common Charges when due, such Unit Owner shall be obligated to pay: (a) a "late charge" of $.04 for each dollar of such amounts which remain unpaid for more than 10 days from their due date (although nothing herein shall be deemed to extend the period within which such amounts are to be paid); and (b) interest at the rate of 1.5% per month (but in no event in excess of the maximum rate permitted by Law) on such unpaid amounts (exclusive of any "late charges" theretofore assessed on such amounts) computed from the due date thereof, together with all expenses, including, without limitation, attorneys' fees and expenses paid or incurred by the Condominium Board or by the Managing Agent in any proceeding brought to collect such unpaid General Common Charges or in an action to foreclose the lien on such Unit arising from said unpaid General Common Charges, whether as provided in Section 339-z of the New York Condominium Act, in the manner provided in Section 339-aa thereof or in any other manner permitted by Law. In addition, if the Condominium Board shall bring an action to foreclose such lien because of unpaid General Common Charges, the defaulting Unit Owner shall be required to pay a reasonable fee for the use and occupancy of its Unit and the plaintiff in such foreclosure action shall be entitled to the appointment, without notice, of a receiver to collect the same. All such "late charges", interest, expenses and fees shall be added to and shall constitute General Common Charges payable by such Unit Owner; and the lien for unpaid General Common Charges shall also secure the payment of such additional sums. A suit to recover a money judgment for unpaid General Common Charges shall be maintainable without foreclosing or waiving the lien securing such charges.

6.3.3    In any action brought by the Condominium Board to foreclose a lien on a Unit because of unpaid General Common Charges, the Condominium Board, acting on behalf of all Unit Owners, shall have the power (but shall not be obligated) to purchase any such Unit at the foreclosure sale thereof, and to acquire, hold, lease, mortgage, convey or otherwise deal with such Unit (but not to vote the interests appurtenant thereto). In the event the net proceeds received on a foreclosure sale (after deduction of all legal fees, advertising costs, brokerage commissions and other costs and expenses incurred in connection therewith) are insufficient to satisfy the defaulting Unit Owner's obligations, such Unit Owner shall remain liable for the deficit, as provided in these Condominium By-Laws.

6.4    Insurance.

6.4.1    The Condominium Board shall be required to obtain and maintain or cause to be obtained and maintained, to the extent available at commercially reasonable rates, and to the extent determined by the Condominium Board to be appropriate, the following insurance: (a) property insurance on an all risk or special risk policy form (excluding terrorism coverage), insuring the entire Building (including each Unit, but excluding all the betterments, improvements, fixtures, furniture, furnishings, decorations, appliances or other personal property not constituting a part of such Unit), together with all building systems and equipment contained therein, and covering the interests of the Condominium, the Condominium Board, the Hotel

- 24 -

Operator and all Unit Owners and Permitted Mortgagees, as their respective interests may appear, in an amount equal to the full replacement value of the Building (exclusive of foundation and footings), without deduction for depreciation; (b) workers' compensation including employers liability and New York State disability benefits insurance; (c) boiler and machinery insurance, if any, determined by the Condominium Board; (d) plate glass insurance to the extent, if any, determined by the Condominium Board; (e) water damage insurance to the extent, if any, determined by the Condominium Board; (f) elevator liability and collision insurance; (g) fidelity or crime insurance covering all officers, Condominium Board Members, trustees, directors and employees of the Condominium and of the Managing Agent and any other party who handle funds of any of the foregoing; (h) directors' and officers' liability coverage; and (i) such other insurance as the Condominium Board may determine from time to time. The Condominium Board will not be required to obtain or maintain terrorism or mold coverage but may do so, and in such event, the cost thereof shall be a General Common Expense as described in Section 6.1.1 above. Each of said policies shall contain a Condominium Property Endorsement and a New York standard mortgagee clause in favor of each Permitted Mortgagee which shall provide that the loss, if any, thereunder shall be payable to such Permitted Mortgagee, as its interest may appear, subject, however, to the loss payment provisions hereinafter set forth. The premiums for all insurance referred to above and for the liability insurance referred to below shall be a General Common Expense and shall be allocated among the Units on the basis of relative proportionate Common Interests.

        6.4.2      To the extent obtainable at commercially reasonable premiums, all property and general liability insurance policies which the Condominium Board is required to maintain must provide that each Unit Owner is an additional insured party and contain, waivers of subrogation and waivers of any defense based on: (i) co-insurance; (ii) other insurance; (iii) invalidity arising from any acts of the insured; or (iv) pro-rata reduction of liability, and shall provide that such policies may not be cancelled or substantially modified without at least 30 days' prior written notice to [all of the insureds, including] the Condominium Board and all Permitted Mortgagees, who have requested the same from the Condominium Board in writing. With respect to the Club Units, such notice need only be given to the Club Board. Duplicate certificates of insurance and of all renewals thereof, if obtainable, together with proof of payment of premiums, shall be delivered to all Unit Owners and Permitted Mortgagees who have requested the same from the Condominium Board in writing. Renewals shall be obtained at least 10 days prior to the expiration of the then current policies.

        6.4.3      All property and fidelity/crime insurance policies shall provide that adjustment of loss shall be made by the Condominium Board unless the loss (property insurance policies only) involves solely the Commercial Units (or the Hotel Limited Common Elements), in which event adjustment shall be made by the affected Commercial Unit Owner(s). The Condominium Board may delegate the right to adjust any loss to the Hotel Unit Owner, the Managing Agent or the Hotel Operator. Insurance proceeds with respect to any loss shall be payable to the Condominium Board or Unit Owners entitled to adjust such loss, as aforesaid, except that the proceeds from any property insurance policy, if in excess of $10,000,000, shall be payable to a New York City bank or trust company designated by the Condominium Board as Insurance Trustee (as hereinafter defined) pursuant to the provisions of Section 12.7. Any

dispute between the Condominium Board and the Commercial Unit Owners under this subsection 6.4.3 shall be determined by Arbitration.

6.4.4    The amount of property insurance coverage to be maintained with respect to the Condominium (including each Unit, but excluding such items noted in subsection 6.4.1 to be excluded) until the first Condominium Board meeting following the First Annual Meeting shall be the amount provided therefor in the First Year's Budget.

6.4.5    All property insurance policies shall provide that such policies may not be cancelled or substantially modified without at least 30 days' prior written notice to all of the insureds, including all Unit Owners and Permitted Mortgagees, who have requested the same from the Condominium Board in writing. Duplicate certificates of insurance and of all renewals thereof, if obtainable, shall be delivered to all Unit Owners and Permitted Mortgagees who have requested the same from the Condominium Board in writing.

6.4.6    The Condominium Board shall also be required to obtain and maintain, to the extent obtainable, commercial general liability insurance against claims for bodily injury including personal injury, death or property damage occurring upon, in or about the Property, in such amounts as from time to time are carried by prudent owners of comparable properties in the City of New York, and in such limits as the Condominium Board, from time to time, may determine, covering: (i) the Condominium Board, the Managing Agent, the Hotel Operator, each Board Member, each officer and employee of the Condominium; and (ii) each Unit Owner and their agents (except as set forth in Section 6.4.12), and Permitted Mortgagees, if any, except that such policy will not cover liability of a Unit Owner for acts or occurrences solely within such Unit Owner's Unit. The Condominium Board shall review such limits once each year. Until the first meeting of the Condominium Board following the First Annual Meeting, such liability insurance shall be at least $2,000,000 with respect to any occurrence ($4,000,000 annual aggregate), with umbrella coverage of at least $25,000,000 and at no time and in no event shall such commercial general liability insurance afford protection to the limit of less than such amounts. The Condominium Board shall also be required to obtain and maintain fidelity or crime insurance covering the Condominium Board, the Managing Agent, each Board Member and each officer and employee of the Condominium and any party handling funds in respect of the maintenance and/or operation of the Building or any part thereof. The insurance required in accordance with this subsection 6.4.6 shall also cover cross-liability claims of one insured against another.

6.4.7    Any insurance maintained by the Condominium Board may provide for such deductible amounts as the Condominium Board determines.

6.4.8    If any change in the use of any Unit causes an increase in the premium for the insurance which the Condominium Board is required to obtain and maintain, as set forth herein or otherwise, then the Condominium Board shall have the right to assess the owner of such Unit a sum equal to the amount of such increase attributable to such use.

6.4.9    The Condominium Board is not required to obtain or maintain any insurance with respect to any personal property of a Unit Owner including but not limited to that

contained in a Unit or any liability of any Unit Owner including but not limited to occurrences within or about a Unit or the Common Elements, if any, exclusive and/or appurtenant thereto. Consequently, all Unit Owners are required to obtain and maintain general (public or personal) liability insurance against claims for bodily injury including personal injury, death or property damage occurring in, on or about such Unit Owner's Unit or the Common Elements, if any, exclusive to his or her Unit, affording protection of at least $1,000,000 per occurrence plus at least $5,000,000 umbrella liability coverage which shall be issued by an insurance company qualified to do business in the State of New York and approved by the Condominium Board, acting reasonably; and the Condominium Board, the Managing Agent, Hotel Unit Owner, Hotel Operator and any mortgagee of the Hotel Unit shall be named as additional insureds on such insurance policies. Subject to the requirements herein, Unit Owners shall not be prohibited from carrying other insurance for their own benefit, at their own expense and the Condominium Board shall not be prohibited from carrying additional insurance; provided, however, all policies of insurance obtained by any Unit Owner with respect to occurrences within or about a Unit or the Common Elements appurtenant thereto shall contain a waiver of the insurer's rights of subrogation against the Condominium Board. The liability of the carriers issuing insurance obtained by the Condominium Board shall not be affected or diminished by reason of any such additional insurance carried by any Unit Owner. To the extent any party is insured, or required to be insured for loss or damage to property hereunder, each party will look to its own insurance policies for recovery.

6.4.10    All policies obtained by any Unit Owner shall be primary with respect to the risks insured thereunder and shall contain waivers of subrogation, if available, and shall further provide that the liability of the carriers issuing insurance obtained by the Condominium Board shall not be affected or diminished by reason of any additional insurance carried by any Unit Owner or the Condominium Board and shall, to the extent obtainable, contain a waiver of the insurer's right of subrogation against the Condominium Board. On or prior to the date upon which any given Unit Owner acquires title to its Unit, each such party shall deliver to the Condominium Board certificates evidencing the insurance required to be maintained by such Unit Owner hereunder. Evidence of each renewal or replacement of a policy shall be delivered by Unit Owner to the Condominium Board at least ten (10) days prior to the expiration of such policy.

6.4.11    If the property insurance for the Building is increased because any change in use of any Commercial Unit, then that Commercial Unit Owner shall pay such increased cost to the Condominium Board (which may be an allocated share of increased umbrella coverage) upon demand therefor by the Condominium Board.

6.4.12    Any insurance coverage(s) required to be obtained by the Condominium Board or any of the Commercial Unit Owners, at the option of such Board or Unit Owner, as applicable, may be satisfied by any so-called builder's risk policy obtained by Fee Owner or either Sponsor, as applicable, or by any master or blanket policies or other policy obtained by or for the Hotel Unit Owner or Hotel Operator, provided the limits and terms of such policy are adequate to meet the terms and conditions set forth in this Article 6. To the extent any such policy obtained and paid for by Fee Owner, Suite Sponsor, Club Sponsor or for the Hotel Unit Owner or Hotel Operator shall satisfy the insurance requirements of the Condominium

- 27 -

Board for the Condominium in respect of any period following the recording of the Declaration, the Condominium Board shall reimburse such party for its prorated share of the cost of such coverage.

6.5    Repair or Reconstruction after Fire or Other Casualty.

6.5.1    In the event that the Building or any part thereof is damaged or destroyed by fire or other casualty (unless three-fourths or more of the Building is destroyed or substantially damaged and 75% or more in Common Interest of all Unit Owners do not duly and promptly resolve to proceed with Repair or restoration), the Condominium Board will arrange for the prompt Repair and restoration thereof (including each Unit, but excluding appliances, improvements, betterments, equipment, furniture, furnishings or other personal property in any such Unit) and the Condominium Board or the Insurance Trustee (as defined in Section 12.7 below), as the case may be, shall disburse the proceeds of all insurance policies to the contractors engaged in such Repair and restoration in appropriate progress payments. If only the Commercial Units or the Limited Common Elements appurtenant thereto are destroyed or damaged by fire or other casualty and if the net insurance proceeds are less than sufficient to cover, or exceed, the cost of Repairs and restoration, the affected Commercial Unit Owners will bear the entire amount of the deficit, or shall receive all of the surplus, as the case may be, in proportion to their respective Common Interests. Similarly, if only the Suite Units or only the Club Units are damaged or destroyed by fire or other casualty and the insurance proceeds are less than sufficient to cover, or exceed, the cost of repairs and restoration, the deficit or surplus, as the case may be, will be borne or shared entirely by all Suite Unit Owners or all Club Unit Owners, as the case may be, in proportion to their respective Common Interests. If said damage or destruction by fire or other casualty affects the General Common Elements, or any combination of the Suite Units, the Club Units or the Commercial Units, then any deficit or surplus in insurance proceeds shall be borne or shared by all Unit Owners, or by the Unit Owners of the affected portions of the Building, as appropriate, in proportion to their respective Common Interests. Any surplus payable to any Unit Owner pursuant to this subsection 6.5.1 shall be lessened by such amounts as may be required to discharge unpaid liens (other than mortgages which are not Permitted Mortgages) on any such Unit in the order of priority of such liens.

6.5.2    Subject to Article 20 of the Declaration, if three fourths or more of the Building is destroyed or substantially damaged and if 75% or more in Common Interest of all Unit Owners do not duly and promptly resolve to proceed with the repair or restoration thereof, the Building (or so much thereof as remains) will not be repaired and the Property shall be subject to an action for partition instituted by any Unit Owner or lienor, as if owned in common, in which case the net proceeds of sale, together with the net proceeds of insurance policies, shall be divided among all Unit Owners in proportion to the respective Common Interests of such Units; provided, however, that no payment shall be made to a Unit Owner until there has first been paid out of its share of such funds, such amounts as may be necessary to discharge all unpaid liens on its Unit (other than mortgages that are not Permitted Mortgages) in the order of the priority of such liens.

6.5.3    As used in this Section 6.5, the words "promptly resolve" shall mean not more than 120 days after the date of the damage of destruction in question occurs.

6.5.4      Any dispute between the Condominium Board and a Unit Owner under this Section 6.5 shall be settled by Arbitration (as provided in Article 11 hereof).

6.5.5      Unless otherwise determined by the Condominium Board, following any fire or other casualty and during any period of repair and restoration of the Property (or until termination of the Condominium as hereinabove provided), the obligation of the Unit Owners in respect of the payment of General Common Charges shall continue unabated.

6.6    Maintenance and Repairs.

6.6.1      Except as otherwise provided in the Declaration or these Condominium By-Laws: (a) all painting, decorating, maintenance, Repairs, whether structural or non-structural, ordinary or extraordinary, and all maintenance, Repairs of all plumbing, heating and lighting fixtures, heating and air-conditioning units and appliances: (i) in or to any Unit (excluding Common Elements included therein except as otherwise provided in these Condominium By-Laws) and the interior side of entrance doors thereto, shall be made by the owner of such Unit at its sole cost and expense; provided that, except in the case of work to be done in Unsold Units or in the Hotel Unit, the Unit Owner thereof will utilize only such contractors, workers or suppliers as are on the Managing Agent's then approved list (or are otherwise approved by the Managing Agent), which list may change from time to time in the Managing Agent's or the Condominium Board's sole discretion; (ii) in or to the General Common Elements (unless caused by or attributable to a Unit Owner, in which case such Unit Owner shall be responsible for the entire cost except with respect to the Hotel Unit Owner and Hotel Operator to the extent arising in the course of performance of its duties with respect to the Hotel Limited Common Elements or the operation of a hotel within the Building, other than due to its/their gross negligence or willful misconduct), shall be made by the Condominium Board and the cost and expense thereof shall be charged as a General Common Expense to all applicable Unit Owners; or (iii) in or to the Hotel Limited Common Elements (unless caused by or attributable to a Unit Owner other than the Hotel Unit Owner, in which case such other Unit Owner shall be responsible for the entire cost) shall be made by the Hotel Unit Owner, and the cost and expense thereof shall be payable as an Allocable Hotel Expense, except to the extent such cost or item of work shall relate solely to the operation of the Hotel Unit (and not also apply to, or be similar to costs or work items similarly applicable to the operation of, access to or enjoyment of the Suite Units or Club Units or any services provided thereto) in which case such cost shall be paid by the Hotel Unit Owner; (b) a Unit Owner shall not be responsible for the cost of painting, decorating, maintenance, repairs or replacements on or to any Unit other than to its own Unit, except in connection with Allocable Hotel Expenses or as otherwise provided herein; and (c) each Unit and all portions of the Common Elements shall be kept in a clean and sanitary condition, and in good working order (and all portions thereof exposed to public view shall be kept in a neat appearance and in first-class condition in accordance with the Hotel Flag Standards), in each case, by the Unit Owner(s) or the Condominium Board, whichever is responsible, under the Condominium Documents, therefor. In the event that any Unit Owner fails to keep his or her Unit in such condition, the Condominium Board or its designee, at the expense of such Unit Owner, may enter such Unit and perform such acts as are necessary to cure such default. Without limiting the foregoing, Unit Owners shall be responsible for all maintenance, repairs and replacements of all plumbing, appliances and lighting fixtures, and

- 29 -

heating, ventilation and air conditioning units in and/or exclusively serving their respective Units. No Suite Unit Owner or Club Unit Owner may make any Alteration or Repair in or to such Unit Owner's Unit that affects the structure of the Building and/or the Building's systems without the prior written approval of the Condominium Board but the foregoing shall not apply to any Unsold Unit. In addition, no Suite Unit Owner or Club Unit Owner may make any Alteration or Repair in or to such Unit Owner's Unit to the extent the same affects the appearance of the exterior of the Unit or the Building. Except as otherwise permitted in the Declaration and these Condominium By-Laws, no Suite Unit Owner or Club Unit Owner may make any Alteration or Repair in or to the General Common Elements without the prior written approval of the Condominium Board which consent may be granted or withheld in the sole discretion of the Condominium Board. The Condominium Board may impose fees upon such Unit Owner to reimburse the Condominium for costs incurred in connection with the review or supervision of such Unit Owner's work.

      6.6.2    Notwithstanding the provisions of subsection 6.6.1:

      (a)    In the event that any painting, decorating, maintenance, repairs or replacements to the Property or any part thereof (including, without limitation, any Unit) is necessitated by or attributable to the negligence, misuse, neglect or abuse of: (i) any one or more Unit Owner(s) or its or their Occupants or Permittees, the entire cost thereof shall be borne entirely by such Unit Owner; or (ii) the Condominium Board or its tenants, agents, invitees, licensees or guests, the entire cost thereof shall be charged to all Unit Owners as a Common Expense, except to the extent in any case that such cost is covered by the proceeds of any insurance maintained pursuant to the provisions hereof.

      (b)    Except as may otherwise be expressly provided herein or in the Declaration, no Unit Owner may install, inscribe or expose any signage on or at any window or any other part of the Common Elements. Notwithstanding the forgoing: (i) there are no restrictions on the ability of the Hotel Unit Owner to place any signs inside the Hotel Unit, provided such signs comply with all applicable Laws and do not significantly and adversely affect all or any portion of the Building outside the Hotel Unit; and (ii) the Commercial Unit Owners will be permitted to place signs and awnings on the storefront(s) outside their Unit(s), and, in the case of the Hotel Unit Owner, on the exterior of the Hotel Unit and on the façade and roofs as otherwise provided herein and in the Declaration, provided that such signs and awnings comply with applicable Laws and do not otherwise violate the provisions of these Condominium By-Laws (other than the first sentence of this subparagraph (b)) or the Declaration. Additionally, notwithstanding the foregoing, the Hotel Unit Owner, the Suite Sponsor and the Club Sponsor and the Condominium Board shall have an easement to erect, maintain, repair and replace signs, notices, advertisements and illuminations on reasonable portions of the Property, including, without limitation, on the portions of the Building, on or at windows and in interior public spaces of the Building (but in no event, except as otherwise provided in the Condominium Documents (including, without limitation, 15.7 of the Declaration), within the interior of the Unit owned by any other party), for the purposes of advertising the availability of Units for sale or lease by such party or its designee and/or, in the case of the Hotel Unit Owner, Hotel Operator or Condominium Board, for any other valid business purpose.

    (c)  The interior and exterior glass surfaces of all windows located in any Unit (other than the Commercial Units, with respect to which the provisions of Section 6.7 hereof shall apply) shall not be altered, colored or painted.

    (d)  The interior and exterior glass surfaces of the Units (other than the Retail Unit) will be washed, cleaned and replaced at the direction of the Condominium Board and the cost thereof charged as a Common Expense of the Unit Owners (excluding the Retail Unit Owner) allocated as set forth in the Cost Allocation Schedule. Any replacement of exterior glass windows in any Suite Unit or Club Unit, because of breakage or otherwise, shall be made by the Condominium Board (and not by the owner of the Suite Unit or Club Unit in question), and charged as a Common Expense of the Suite Units and Club Units on an allocated basis (unless such breakage is caused or attributable to negligence, misuse, neglect or abuse of one or more Unit Owner(s) or its or their Occupants or Permittees, in which event such replacement of exterior glass windows shall be made by the Condominium Board, at the expense of such Unit Owner(s)) to the extent that the Condominium Board's insurance does not cover the same. Any replacement of glass windows in a Commercial Unit, because of breakage or otherwise, shall be promptly performed by the affected Commercial Unit Owner at its sole cost and expense (except to the extent the need to replace same results from the negligence, misuse or abuse of another Unit Owner or the Condominium Board). In the event that, under applicable Laws, any exterior windows in any of the Units must be reduced in size or closed, the owner of the affected Unit shall solely bear the cost(s) relating to such reduction or closure and, in the event that closure is required, such windows will be enclosed by the Condominium Board, at the sole cost of the affected Unit Owner.

    (e)  All costs associated with using, owning, operating, maintaining, insuring, Repairing and Altering any elevator (and the equipment associated therewith) which is a General Common Element shall be allocated to the Unit Owner(s) in the manner set forth on the Cost Allocation Schedule.

    6.6.3  Each Suite Unit and Club Unit and all portions of the Common Elements shall be kept in the condition and otherwise in such manner that Hotel Flag Standards are maintained by the Unit Owner or the Condominium Board, whichever is responsible for the maintenance thereof under the Declaration or these Condominium By-Laws, and such Unit Owner or the Condominium Board shall promptly make or perform, or cause to be made or performed, all maintenance work, Repairs necessary in connection therewith. To promote a consistent appearance of the Building from the outside, at the discretion of the Condominium Board, each Suite Unit Owner and Club Unit Owner will be required to install and maintain window treatments having a neutral-colored backing on the sides facing the windows in its Unit, which window treatments and backings must conform to any specifications (including a new color, texture and/or shape) established from time to time by the Condominium Board in accordance with the requirements of the Hotel Unit Owner.

    6.6.4  Without limiting the generality of the other provisions of these Condominium By-Laws (including, without limitation, Section 6.6.3 hereof and the Rules and Regulations), each Commercial Unit Owner, at its sole cost and expense, shall:

(a)      in the case of the Retail Unit, clean the interior and exterior of the windows and doors (including, in each case, the frames thereof) in its Commercial Unit and in the perimeter walls thereof whenever necessary, and clean and polish the inside and outside of the store fronts of its Commercial Unit whenever reasonably necessary;

(b)      keep its Commercial Unit clean, and in a sanitary condition, keep all plumbing and sanitary systems and installations serving its Commercial Unit in a good state of repair and operating condition to the points they connect with the main vertical risers and stacks of the Building;

(c)      use reasonable efforts to eliminate all noxious fumes, odors or gases originating from its Commercial Unit and vent the foregoing;

(d)      utilize all reasonable measures to keep its Commercial Unit free from rats, mice, insects, and other vermin; and

(e)      with respect to the Retail Unit Owner only, on a daily basis, keep the Fifth Avenue sidewalk in front of its Unit clean and free of dirt, mud and rubbish, but the cost of ice and snow removal and all necessary repairs or replacements to the sidewalks for which the Condominium is responsible shall be a General Common Charge (unless the need to make such repair or replacement is caused by or attributable to such Unit Owner in which case such Unit Owner shall be responsible for the entire cost).

6.6.5      In the event that any Unit Owner, after receipt of written notice from the Condominium Board, fails or neglects in any way to perform any of its obligations with respect to the maintenance, Repair or replacement in or to its Unit as provided in this Article 6 or of any Common Element for which such Unit Owner is responsible under the Declaration or these Condominium By-Laws, the Condominium Board may perform or cause to be performed such maintenance, Repair or replacement unless such Unit Owner, within 10 days after receiving notice of such default by the Condominium Board, (except in the event of an "emergency", *i.e.*, a condition requiring Repairs, replacements or installations immediately necessary for the preservation or safety of all or any portion of the Property or for the safety of occupants of the Building or other persons, or required to avoid the suspension of any necessary service in the Building or with respect to all or any portion of the Property), cures such default, or in the case of a default not reasonably susceptible to cure within such period, commences (within such 10 day period) and thereafter prosecutes to completion, with due diligence, the curing of such default. All sums expended and all costs and expenses incurred by the Condominium Board in connection with the making of any such maintenance, Repair or replacement in or to such Unit Owner's Unit or to any such Common Element for which such Unit Owner is responsible as aforesaid, together with interest thereon at the rate of 1.5% per month (but in no event in excess of the maximum rate permitted by Law), shall be immediately payable by such Unit Owner to the Condominium Board and shall, for all purposes hereunder, constitute General Common Charges payable by such Unit Owner.

6.7     Alterations and Repairs.

        6.7.1      Except as otherwise provided in the Declaration or these
Condominium By-Laws:

        (a)     No Suite Unit Owner or Club Unit Owner (other than any owner of
Unsold Units with respect to such Units) shall make any Alterations or Repairs in or to its Unit
which affects the structure or systems of the Building (including, without limitation, the
mechanical, electrical, plumbing, heating, ventilating and/or air-conditioning systems thereof),
without obtaining the prior written consent of the Condominium Board thereto. Prior to, and as a
condition of, the granting of its consent to the making of any such Alteration or Repair in or to a
Unit, the Condominium Board, at its option, may require any such Unit Owner to execute an
agreement, in form and substance satisfactory to the Condominium Board, setting forth the terms
and conditions under which such Alteration or Repair may be made. Any Unit Owner seeking to
perform such work requiring the consent of the Condominium Board shall be liable for all costs
and expenses incurred by the Condominium Board in obtaining such consent.

        (b)     All Alterations or Repairs which would affect the structure or systems of
the Building (including, without limitation, the mechanical, electrical, plumbing, heating,
ventilating and/or air-conditioning system thereof, but excepting any system which exclusively
serves the Unit in question) and all Alterations or Repairs to any such Unit shall be made in
accordance with plans and specifications, which plans and specifications shall be subject to
review and approval by the Condominium Board; except that Hotel Unit shall not be subject to
such requirement.

        (c)     The Condominium Board may impose fees upon any Unit Owner to
reimburse the Condominium for costs incurred by the Condominium Board in connection with
the review and supervision of such Unit Owner's work.

        (d)     Notwithstanding any other provision of the Declaration, Condominium
By-Laws or otherwise, no Suite Unit Owner or Club Unit Owner may make any Alteration or
Repair in or to its Unit so as to, or otherwise to, add or modify any kitchen or similar appliances
(including, without limitation, cooking facilities) and/or which would require any change in (or
reclassification of) the certificate of occupancy or zoning classification of all or any portion of
the Building without the consent of the Condominium Board, which consent may be granted or
withheld in the Condominium Board's sole discretion.

        6.7.2      All Alterations and Repairs by a Unit Owner shall be performed:

        (a)     except with respect to Allocable Hotel Expenses, at the Unit Owner's sole
cost and expense (which shall include, without limitation, the reasonable costs of the
Condominium Board incurred in reviewing and approving such Unit Owner's submission for
approval (if such approval is required under these Condominium By-Laws) and in monitoring
such Unit Owner's compliance with the provisions of this Section 6.7);

                                    - 33 -

(b)     in a manner which will not interfere with, or cause any labor unrest, disturbances or stoppages in, the work of Condominium employees or hotel employees or other contractors or subcontractors employed in the Hotel Unit or on behalf of the Condominium;

(c)     using duly licensed contractors to the extent required by Law and, if required under any contract with any union whose members are performing services directly or indirectly at the behest, for the benefit, or for the account of the Hotel Unit Owner or Hotel Operator, or the Condominium Board, using the applicable employees covered by said union contract or such other persons as may be consented to by the applicable union;

(d)     only during only such days and hours as may be specified by the Condominium Board in its reasonable judgment, or as otherwise approved by the Hotel Unit Owner;

(e)     only after obtaining such insurance, naming the Condominium Board, the Managing Agent, Fee Owner, the Hotel Unit Owner, Hotel Operator, the Retail Unit Owner, the Suite Sponsor and the Club Sponsor as additional insureds, as the Condominium Board or the Managing Agent may require and indemnifying the Condominium Board, all other Unit Owners and the Managing Agent against any liability arising from the work;

(f)     in the case of a Suite Unit or Club Unit, employing such architects, engineers, contractors, subcontractors, workers, suppliers and other laborers who are on the Managing Agent's then approved list (or are otherwise approved by the Managing Agent), as such list may change from time to time, in the sole discretion of the Condominium Board or the Managing Agent; and

(g)     in compliance with the Condominium Documents and all Laws, including, without limitation, Laws relating to licensing of contractors, obtaining of all necessary governmental permits, authorization, certificate and licenses for the commencement and completion of any Alterations and obtaining of any amendment to the Certificate of Occupancy for such Unit, if necessary (subject to the approval rights with respect thereto provided in the Condominium Documents).

6.7.3     The Unit Owner performing, causing, permitting or suffering such Alterations to be performed shall, if required by the Condominium Board, pay the cost of: (i) any amendment of the Declaration and the Floor Plans, if required by the Condominium Board or by any applicable Laws, to reflect any such Alterations, (ii) obtaining all necessary governmental permits, authorizations, certificates and licenses for the commencement and completion of any Alterations (copies of which shall be delivered to the Condominium Board promptly after the issuance thereof and prior to the commencement of any Alterations), and obtaining any amendment to the Certificate of Occupancy for such Unit, if necessary (subject to the approval rights with respect thereto provided in the Condominium Documents); provided that no work or change by or on behalf of a Suite Unit Owner or Club Unit Owner will be permitted without the consent of the Condominium Board (which consent may be withheld or conditioned in the sole discretion of such Board) if such work or change would result in a delay in obtaining a certificate of completion from the New York City Department of Buildings or a change in the

certificate of occupancy or zoning classification of any such Unit or any other portion of the Building; and (iii) in the case of a Suite Unit or Club Unit, any reasonable architectural, engineering and legal fees incurred by the Condominium Board in connection with such work. Neither the Condominium Board nor any Unit Owner (other than the Unit Owner making, permitting or suffering any Alterations to be made in or to its Unit (except with respect to any Allocable Hotel Expenses)) shall incur any liability, cost or expense either: (A) in connection with the preparation, execution or submission of the applications referred to above; (B) to any contractor, subcontractor, supplier, architect, engineer or laborer on account of any Alterations made or permitted or caused to be made by any Unit Owner; (C) to any person or entity asserting any claim for personal injury or property damage arising therefrom; or (D) arising out of a Unit Owner's failure to obtain any permit, authorization, certificate or license, or to comply with the Condominium Documents and the provisions of any Laws insofar as the same relates to Alterations. A Unit Owner making or causing, permitting or suffering any Occupant to make, any Repair or Alteration shall be deemed to have agreed to indemnify, defend and hold the Condominium Board, the Managing Agent and all other Unit Owners harmless from and against any liability, loss, cost, or expense arising therefrom, and from and against any and all loss, cost, expense (including, but not limited to, attorneys' fees and disbursements), damage, injury or liability, whether direct, indirect or consequential, resulting from, arising out of, or in any way connected with, any of the foregoing.

6.7.4    Any application to any department of the City of New York or to any other Governmental Authority having jurisdiction thereof for a permit to make an Alteration in or to any Unit shall, if and to the extent required by Law or such department or authority, be executed by the Condominium Board, in the case of any Alteration which such party has approved (or for which its approval is not required), provided that the Condominium Board shall not incur any liability, cost or expense in connection with or by reason of executing such application.

6.7.5    Notwithstanding anything to the contrary contained in this Section 6.7 (but subject to all Laws), however, each of Fee Owner, the Hotel Unit Owner, the Suite Sponsor, the Club Sponsor and their respective designee(s) shall each have the right pursuant (and subject) to the terms of the Declaration, without the approval of the Condominium Board: (i) to make any Alterations in or to any Unsold Units, whether structural or non-structural, interior or exterior, ordinary or extraordinary (including, without limitation, those required under the applicable Offering Plan, any Purchase Agreement or otherwise); and (ii) to subdivide, combine and change the boundary walls of Unsold Units. Additionally, any initial purchaser of any Unsold Unit shall have the right, without approval of the Condominium Board, to make any Alterations in or to its Unit, provided that the Suite Sponsor or its designee or the Club Sponsor or its designee, as the case may be, has consented to the same in writing at or prior to the closing of title to such Unit (which consent may be withheld or conditioned in such party's sole discretion), that such purchaser obtains all necessary approvals required by Law, and that such purchaser complies with all of the other requirements of this Section 6.7.

6.7.6    In addition to the requirements set forth above in this Section 6.7, until a Certificate of Completion is obtained for the Building, if one is required, no Suite Unit Owner or Club Unit Owner shall make any Alterations in or to its Unit without first notifying the Hotel

Unit Owner, the Hotel Operator and the applicable Sponsor of the same in writing and complying with such party's/ies' requirements with respect to the same. Such requirements may include, without limitation, the following:

(a)     such work not include any change that would result in a delay in obtaining a temporary or permanent Certificate of Occupancy or Certificate of Completion for the Building or any portion thereof, or any amendment to, or extension of, the same if theretofore issued;

(b)     such Unit Owner post a bond or other similar security that is reasonably acceptable to the Hotel Unit Owner in an amount sufficient (in such party's reasonable judgment) to insure the diligent completion of the work and the filing of any required notices or certificates with respect to such work and the completion of the same with all Governmental Authorities having jurisdiction;

(c)     such work not be commenced until such Unit Owner causes all required plans, specifications, notices and/or certifications to be filed with all Governmental Authorities having jurisdiction, procures all required permits and licenses with respect to the same, and delivers copies of all such plans, specifications, notices, certifications, permits and licenses to Sponsor;

(d)     such work be diligently prosecuted to completion in compliance with all plans, specifications, notices and/or certifications and in conformity with all permits and licenses;

(e)     the applicable Sponsor and its representatives shall be given reasonable opportunity, from time to time, to inspect such work as it progresses;

(f)     promptly after the completion of such work, all necessary inspections and approvals of the same shall be obtained, all necessary notices and/or certifications shall be filed with the appropriate Governmental Authorities and Hotel Unit Owner and the applicable Sponsor shall be given a copy of all such inspections, approvals, notices and certifications; and

(g)     such Unit Owner shall indemnify, defend and hold the Hotel Unit Owner and the applicable Sponsor harmless from any cost, expense, claim, or liability arising, directly or indirectly, from such work, including, without limitation, any cost, expense, claim, or liability incurred or suffered by such party/ies due to any violation of a Law or due to any delay in obtaining a temporary or permanent Certificate of Occupancy for the Building (or any amendment to, or extension of, the same if theretofore issued) or a Certificate of Completion as a result of such work or the failure to timely make all appropriate governmental filings in connection with the same.

If any Unit Owner commences any such Alterations in violation of the foregoing terms and conditions, or fails to comply with the reasonable requirements of the Condominium Board in connection with the same, the Condominium Board shall be entitled to cause such work by such Unit Owner to be halted, including, without limitation, causing the Managing Agent to deny access to the Building to the Unit Owner's workers and suppliers, until such Unit Owner so complies. During the period until such Unit Owner is permitted hereunder to resume its work,

the Condominium Board shall have the right to cause to be performed (whether by itself, its designee or otherwise) any and all work in and to such Unit Owner's Unit as shall be necessary, in the Condominium Board's sole judgment, in order to avoid any delay in obtaining a temporary or permanent Certificate of Occupancy or Certificate of Completion for the Building or any portion thereof (or any amendment to, or extension of, the same if theretofore issued), whether or not such work shall be in compliance with the plans and specifications for the work theretofore performed by, or on behalf of, such Unit Owner. The cost and expense of any such work so performed shall be borne by such Unit Owner and shall be paid to the Condominium Board within 15 days of the Condominium Board's or the Managing Agent's written demand therefor.

6.7.7    Alterations to Commercial Units. A Commercial Unit Owner may make Alterations in or to its Commercial Unit (including any decorations that are compatible with the first class character and location of the Building and installing equipment on any rooftop area (as described below)) which, in each such case, comply with applicable Laws, without obtaining the approval of the Condominium Board, except that Alterations which would materially adversely affect the structural, mechanical, electrical or plumbing elements of the Building, or the exterior appearance of the Building, shall be subject to the approval of the Condominium Board, which shall not be unreasonably withheld; and any Repair or Alteration of the Retail Unit which would adversely affect the Hotel Unit or the Hotel Limited Common Elements or the operation thereof shall be subject to the prior reasonable approval of the Hotel Unit Owner. In the event that a dispute arises between a Commercial Unit Owner and the Condominium Board (or between Commercial Unit Owners) regarding any Alteration subject to the Condominium Board's approval (or which the Condominium Board asserts is subject to its approval), such dispute shall be submitted to Arbitration in accordance with the terms of Article 11 of these Condominium By-Laws, provided that the parties shall cause such Arbitration to proceed in an expedited manner. A Commercial Unit Owner will be granted reasonable access to all parts of the Building (other than the interior of Suite Units or Club Units) to which such Commercial Unit Owner reasonably requires access in order to perform any work or Alterations desired by the Commercial Unit Owner thereof and permitted or required to be made by such Commercial Unit Owner hereunder.

6.8    Alterations to General Common Elements. Except as otherwise provided in the Declaration or these Condominium By-Laws, all Alterations in or to the General Common Elements will be made by the Condominium Board. Except as otherwise expressly provided in these Condominium By-Laws, the costs of Alterations and/or Repairs to the General Common Elements will be charged to all Unit Owners as a General Common Expense and allocated as set forth in the Cost Allocation Schedule.

6.9    Alterations to the Hotel Limited Common Elements. Except as otherwise provided in the Declaration or these Condominium By-Laws, all Alterations in or to the Hotel Limited Common Elements will be made by the Hotel Unit Owner subject to the same terms, conditions and requirements as set forth in the Condominium Documents with respect to the Hotel Unit (including, without limitation, the provisions with respect to Allocable Hotel Expenses).

6.10    Use of Common Elements; Use of Adjacent Sidewalks.

6.10.1    Except as otherwise provided herein or in the Declaration, Common Elements may be used only for ingress and egress and for the furnishing of the services and facilities and for the other uses for which they are reasonably suited.

6.10.2    In no event shall any Unit Owner impair, restrict or impede the use of the General Common Elements by any other Unit Owner or anyone claiming by, through or under any other Unit Owner, subject to the rights of the Condominium Board and the Hotel Unit Owner as set forth in the Condominium Documents.

6.10.3    The Unit Owner(s) of any one or more Suite Units or Club Units, which Unit or Units are the only Unit or Units serviced or benefited by any Common Element adjacent or appurtenant thereto (for example, that portion at the end of any hallway which is directly adjacent to any such Units located on opposite sides of such hallway) and not affecting access in any material way or service (including, without limitation, heating, ventilating and air conditioning) to any other Unit or to any other portion of the Common Elements shall, to the extent permitted by Law and subject to the consent of the Condominium Board (which consent may be granted or withheld in the Condominium Board's sole discretion but shall not be required if the Unit Owner(s) in question shall be Fee Owner, the Hotel Unit Owner, Suite Sponsor, the Club Sponsor or their respective designee(s)), have the exclusive right to use that portion of the Common Elements as if it were a part of such Units (including the right, in the above example of a portion of a hallway, to enclose such portion) and no amendment to the Declaration nor reallocation of Common Interests shall be made by reason thereof; provided, however, that notwithstanding the provisions of Subsection 6.1 hereof, such Unit Owner or Owners, at its/their sole cost and expense, shall: (a) be responsible for the operation, maintenance and Repair of that portion of the Common Elements for so long as such Unit Owner or Owners exercise such exclusive right of use; and (b) restore that portion of the Common Elements to its original condition, reasonable wear and tear excepted, after such Unit Owner or Owners cease to exercise such exclusive right of use. The owner of any such Units which are Unsold Units shall have the rights set forth in the preceding sentence without the necessity for obtaining the consent of the Condominium Board.

6.10.4    Notwithstanding anything to the contrary contained herein, the Suite Sponsor, the Club Sponsor and their respective designees shall have the right, until the tenth (10th) Anniversary of the First Closing, to use portions of the Common Elements (subject to the reasonable consent of the Hotel Unit Owner), without charge, for exhibitions or for other promotional functions with respect to Sponsor's sales program or otherwise.

6.11    Use of Commercial Units; Permits and Licenses.

(a)    The Commercial Units may be used for any lawful purpose, including, without limitation, for hotel, retail, residential, fractional or club ownership, public event, restaurant, banquet, banking, commercial, and office purposes (in each case, subject only to compliance with Law). Notwithstanding the foregoing, the consent of the Hotel Unit Owner shall be required if the Retail Unit is used for any purpose other than as luxury retail space. The

Condominium Board will have no right to restrict or limit any of the uses of, or Alterations in or Repairs to, the Commercial Units (including the storefronts thereof) which are permitted by Law, except as otherwise specifically set forth herein or in the Declaration. No income derived from any use of the Commercial Units or the Limited Common Elements, if any, appurtenant thereto will constitute income to the Condominium Board or to any other Unit Owner.

(b)     A Commercial Unit Owner shall not at any time use or occupy, or suffer or permit anyone to use or occupy its Commercial Unit, or do or permit anything to be done in its Commercial Unit, in violation of the certificate of occupancy for its Unit or for the Building.

(c)     If any governmental license or permit, other than a certificate of occupancy, shall at any time be required for the proper and lawful conduct of business in a Commercial Unit then being conducted or to be conducted in that Commercial Unit or any portion thereof, then the subject Commercial Unit Owner, at it's own expense, shall duly procure and thereafter maintain such license or permit.

6.12     General Provisions as to Use.

6.12.1     No nuisance shall be allowed in the Property nor shall any use or practice be allowed in the Property which interferes with the peaceful possession or proper use thereof by the Unit Owners or the Occupants of their respective Units. No improper, offensive or unlawful use shall be made of the Property or any portion thereof. All Laws relating to any portion of the Property shall be complied with at the sole expense (except as herein provided with respect to Allocable Hotel Expenses) of whichever of the Unit Owners or the Condominium Board shall have the obligation to maintain or repair such portion of the Property.

6.12.2     No portion of a Suite Unit or Club Unit (other than the entire Unit, except if the Unit in question has a "lockoff" feature, in which case either part of the Unit may be rented (but not conveyed) separately) may be sold, conveyed, leased or subleased.

6.12.3     Each Unit Owner shall promptly comply or cause compliance with all Laws applicable to its Unit. No Unit Owner shall use or permit the use of Hazardous Materials on, about, under, or in its Unit or the Property (except, in the case of each Commercial Unit Owner, in incidental amounts in the ordinary course of its business). Each Unit Owner agrees to indemnify and hold harmless the Condominium Board and each other Unit Owner from and against any and all claims or demands, including any action or proceeding brought thereon, and all costs, losses, expenses and liabilities of any kind relating thereto, including, but not limited to, costs of investigation, remedial response, and reasonable attorneys' fees and cost of suit, arising out of or resulting from any Hazardous Material used or permitted to be used by such Unit Owner on, about, under or in his or her Unit or the Property, except with respect to the Hotel Unit Owner (and Hotel Operator) to the extent arising in the course of performance of its duties with respect to the Hotel Limited Common Elements or the operation of a hotel within the Building, other than due to its/their gross negligence or willful misconduct. As used herein, the term "Hazardous Materials" means petroleum products, asbestos, polychlorinated biphenyls, radioactive materials and all other dangerous, toxic or hazardous pollutants, contaminants, chemicals, materials or substances listed or identified in, or regulated by, any Environmental

Law; and "Environmental Laws" means all federal, state and local laws, rules, regulations, ordinances, requirements and orders whether now existing or hereafter enacted, promulgated or issued, regulating, relating to or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material and/or the protection of human health and the environment.

6.12.4    Notwithstanding anything in this Section 6.12 to the contrary, the foregoing shall not in any way be construed to impair or prevent the right or ability of the Hotel Unit Owner, the Hotel Operator and/or its/their designee(s) to lawfully operate a full-service hotel (with ancillary uses) in any portion of the Property.

6.13    Right of Access.

6.13.1    Each Unit Owner grants a right of access to its Unit to the Condominium Board, the Managing Agent and/or any other person authorized by any of the foregoing, for the purposes, among others, of: making inspections of, or removing violations noted or issued by any Governmental Authority against, the Common Elements or any other part of the Property; curing defaults hereunder or under the Declaration or Rules and Regulations by such Unit Owner or correcting any conditions originating in its Unit and having a reasonable likelihood of causing damage to another Unit or all or any part of the Common Elements; performing maintenance, installations, alterations, repairs or replacements to the mechanical, plumbing or electrical services or other portions of the Common Elements within its Unit or elsewhere in the Building; reading, maintaining or replacing utility meters relating to the Common Elements, its Unit or any other Unit in the Building; or correcting any condition which violates the provisions of any Permitted Mortgage covering another Unit; provided that (a) requests for entry to any Unit are made not less than one day in advance; and (b) any such right shall be exercised in such a manner as will not unreasonably interfere with the normal conduct of business by the Occupants of the Commercial Units or with the use of the other Units for their permitted purposes. In case of an "emergency", as defined in subsection 6.6.5, such right of entry shall be immediate, without advance notice, whether or not the Unit Owner or other Occupant is present.

6.13.2    Each Suite Unit Owner grants to the Suite Sponsor and each Club Unit Owner grants to the Club Sponsor, in each case, together with its contractors, subcontractors, agents and employees, a right of access for the purpose of complying with and fulfilling each such party's obligations as set forth in the applicable Offering Plan, provided that access thereto shall be exercised by such party in such a manner as will not unreasonably interfere with the use of the Unit in question for its or their permitted purposes.

6.14    Rules and Regulations. Annexed hereto as Exhibit C and made a part hereof are rules and regulations (the "Rules and Regulations") concerning the use of the Units and Common Elements. The Condominium Board may from time to time modify, amend or add to such Rules and Regulations, except that: (a) a Majority of Unit Owners may overrule the Condominium Board with respect to any such modification, amendment or addition; (b) no such adoption, modification, amendment or addition affecting either Sponsor or the Unsold Units may be made unless agreed to, in writing, by such Sponsor or its designee; and (c) any such adoption,

modification, amendment or addition or any other action which adversely affects a Commercial Unit or the Unit Owner thereof shall require the consent of the subject Commercial Unit Owner. Copies of any newly adopted Rules and Regulations, or any modifications, amendments or additions thereto shall be furnished by the Condominium Board to each Unit Owner not less than 30 days prior to the effective date thereof.

6.15    Real Estate Taxes, Water Charges and Sewer Rents.

6.15.1    Water and sewer services for the Building shall be supplied by the City of New York or other utilities servicing the Property. Unless and until water charges and sewer rents are billed directly to the Unit Owners by the proper authority, the Condominium Board shall promptly pay such charges, together with all related sewer rents arising therefrom, and allocate the same as a General Common Expense among the Unit Owners in the manner set forth on the Expense Allocation Schedule, and the Unit Owners shall be required to reimburse the Condominium Board, as a General Common Charge, for their share of such charges and rents.

6.15.2    Until the Units are separately assessed and billed for real estate tax purposes, the Condominium Board will pay all real estate taxes with respect to the Property to the Department of Finance of the City of New York (or directly to Fee Owner if Fee Owner has paid such taxes) and allocate the cost thereof among the categories of Units on the basis of approximately: (i) 81.48% of such taxes to the Hotel Unit; (ii) 2.95% of such taxes to the Retail Unit; (iii) 7.77% of such taxes to the Suite Units (in the aggregate); and (iv) 7.80% of such taxes to the Club Units (in the aggregate). The share so allocated to the Suite Units, in the aggregate, will then be pro-rated to each individual Suite Unit on the basis of relative Common Interest; and the share so allocated to the Club Units, in the aggregate, will then be pro-rated to each individual Club Unit on the basis of relative Common Interest. Each Unit Owner will then reimburse the Condominium Board for his or her allocated share. Such reimbursement shall be payable as if it were a General Common Charge. Such taxes will be paid in a timely manner so that no lien will be placed on the Condominium Property or any Unit. If either Sponsor fails to pay real estate taxes attributable to its Unsold Unit(s) in a timely manner and as a result of such failure a lien is placed on the Condominium Property and/or any other Unit, such Sponsor shall be required to immediately cause such lien to be removed at its sole cost and expense. A Unit Owner will not be responsible for the payment of, and will not be subject to any lien arising from, the non-payment of real estate taxes assessed against any other Units.

6.15.3    In the event of a proposed sale of any Unit, the Condominium Board (so long as the Condominium Board is still collecting and paying such real estate taxes and/or water charges and sewer rents), upon the written request of the selling Unit Owner, shall execute and deliver to the purchaser of such Unit or to such purchaser's title company, a letter agreeing to promptly pay all such taxes, charges and rents affecting such Owner's Unit to the date of the closing of title to such Unit.

6.15.4    The Condominium Board shall commence, pursue, compromise and settle certiorari proceedings to obtain reduced real estate tax assessments with respect to any or all of the Suite Units and Club Units on behalf of and as agent for the respective Unit Owners thereof, but only with respect to such Units as to which the respective Unit Owners thereof or

their representative(s) have, in writing requested and authorized the Condominium Board to do so, and indemnified the Condominium Board from and against all claims, costs and expenses (including, without limitation, attorneys' fees) resulting from such proceedings. All such Unit Owners making such request to the Condominium Board will share the costs in connection therewith in proportion to the benefits derived therefrom by such Unit Owners. Notwithstanding the foregoing, each Suite Unit Owner and Club Unit Owner shall be deemed to have so requested, irrevocably authorized and indemnified the Condominium Board in connection with proceedings covering the first full (and any earlier partial) tax year following the recording of the Declaration; [and, with respect to the Club Unit Owners, each tax year thereafter.] The respective Commercial Unit Owners shall commence, pursue, compromise and settle certiorari proceedings to obtain reduced real estate tax assessments with respect to their Commercial Unit(s) at their own expense. In the event any Unit Owner (subject to the foregoing provisions of this subsection 6.15.4) individually seeks to have the assessed valuation of its Unit reduced by bringing a separate certiorari proceeding, the Condominium Board, if necessary for such proceeding, will execute any documents or other papers required for, and otherwise cooperate with such Unit Owner in pursuing, such reduction, provided that such Unit Owner indemnifies, defends and holds the Condominium Board harmless from all claims, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) resulting from such proceedings.

6.16    Electricity; Gas; and Steam. Electricity, gas and steam for the Building (including all Units and Common Elements) is provided by Con Edison (or such other utility or provider as determined by the Condominium Board from time to time) and, as of the recording of the Declaration, is not separately metered (except with respect to electricity and chilled water service to the Retail Unit which shall pay the costs of such utility service directly to the applicable provider to the extent directly metered, or to the Condominium Board to the extent submetered). The Condominium Board shall pay the cost of all such utilities (except with respect to utilities metered or submetered to the Retail Unit) and allocate the same among the Unit Owners as set forth in the Expense Allocation Schedule.

6.17    Housekeeping Charges. For so long as the Hotel Unit is operated as a hotel and housekeeping services are provided to the rooms therein, each Suite Unit and Club Unit shall be required to pay for daily housekeeping for each night that such Unit is shown to be registered for occupancy. Such charges shall be at the charge therefor set from time to time by the Hotel Unit Owner and deemed additional General Common Charges due to the Condominium Board, however, the same shall be payable by the applicable Unit Owner directly to the Hotel Unit Owner or its designee.

6.18    Remedies for Violations of Condominium By-Laws or Rules and Regulations by Unit Owners.

6.18.1    The violation of any of the Rules and Regulations or the breach of any Condominium By-Law contained herein, or the breach of any provision of the Declaration, shall give the Condominium Board the right, in addition to any other rights set forth in these Condominium By-Laws or the Declaration: (i) to enter any Unit or Common Elements in which, or as to which, such violation or breach exists and to summarily abate and remove, at the

- 42 -

expense of the defaulting Unit Owner, any structure, thing or condition resulting in such violation or breach and the Condominium Board shall not thereby be deemed guilty or liable in any matter of trespass; and/or (ii) to enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any such violation or breach, provided that the Condominium Board gives the Unit Owner notice (which may be by telephone, telecopy or suitable electronic means) that such violation exists, that Repairs are necessary and that the Condominium Board will complete such Repairs in the event the Unit Owner does not promptly act or complete the Repairs, and/or (iii) to levy such fines and penalties as the Condominium Board may deem appropriate, and the Condominium Board shall have the same remedies for non-payment of such fines and penalties as for non-payment of General Common Charges.

      6.18.2    The violation or breach of any of the provisions of these Condominium By-Laws, any of the Rules and Regulations or the Declaration with respect to any rights, easements, privileges or licenses granted to a Sponsor or its designee shall give to such Sponsor and its designee the right, in addition to any other rights set forth in these Condominium By-Laws or the Declaration, to enjoin, abate or remedy by appropriate legal proceedings, either at law or in equity, the continuance of any such violation or breach.

      6.19    Estoppel Certificates.  Any Commercial Unit Owner may request from the Condominium Board for the benefit of a prospective purchaser, lender or Occupant, or otherwise, a statement: showing the amount of unpaid General Common Charges pertaining to such Unit Owner; stating whether to the best of its knowledge there exists any known default under the Declaration or these Condominium By-Laws by the requesting Person, and if there are known defaults, specifying the nature thereof; stating the date and recording information of any amendments to the Declaration and these By-Laws, and stating whether the Declaration and these By-Laws are in full force and effect; and the Condominium Board shall provide such statement within ten (10) Business Days after request therefor. The Condominium Board shall be entitled to charge the requesting Person a reasonable fee for preparing and rendering said statement. Any Permitted Mortgagee may request a similar statement with respect to a Unit upon which it holds a Permitted Mortgage of which the Condominium Board has been duly given notice, with any reasonable charge therefor to be paid by the applicable Unit Owner. From time to time, the Condominium Board may request a statement from each Commercial Unit Owner, that, except as may be otherwise specified, to the best of its knowledge the Condominium Board is not in default under any of its obligations under the Declaration or these By-Laws, and such other reasonable information as may be reasonably requested. The addressee of any such statement shall be entitled to rely thereon; and each statement delivered pursuant to this Section 6.19 shall act as a waiver of any claim between the addressee and the Condominium Board or Person furnishing such statement to the extent such claim is based upon facts contrary to those asserted in the statement and to the extent the claim is asserted against a bona fide encumbrancer or purchaser for value without knowledge of facts to the contrary of those contained in the statement, and who has acted in reasonable reliance upon the statement provided, however, that: (i) the issuance of such statement shall in no event subject the Condominium Board or Commercial Unit Owner to any liability for the negligent or inadvertent failure of the Condominium Board to disclose correct and/or relevant information; and (ii) such issuance shall not be construed to waive any rights of the issuer with respect to any audit of or adjustments to General Common Charges (or Allocable Hotel Expenses) as provided for in the

- 43 -

Condominium Documents, or to challenge acts committed by a Unit Owner for which approval
by or consent of the Condominium Board was required but not sought or obtained.

## ARTICLE 7

## MORTGAGES

7.1     Notice to Board. Each Unit Owner shall have the right to mortgage its Unit,
subject only to the terms and conditions set forth in this Article 7. A Suite Unit Owner or Club
Unit Owner who or which mortgages its Unit(s), or the holder of such mortgage, shall notify the
Condominium Board of the name and address of the mortgagee and shall file a conformed copy
of the note and mortgage with the Condominium Board, and such Unit Owner shall, prior to the
making of such mortgage, satisfy all unpaid liens against such Unit(s), other than Permitted
Mortgages. A Suite Unit Owner or Club Unit Owner satisfying a mortgage covering its Unit
shall so notify the Condominium Board and shall file a conformed copy of the satisfaction of
mortgage with the Condominium Board. Notwithstanding the foregoing, the Commercial Unit
Owners may mortgage their Unit(s) without any restriction or limitation.

7.2     Notice to Mortgagees of Default and Unpaid General Common Charges.
Whenever so requested in writing by a Permitted Mortgagee of a Unit, the Condominium Board
shall promptly report to such Permitted Mortgagee any default in the payment of General
Common Charges or any other default by the Unit Owner of such Unit under any of the
provisions of the Declaration or these Condominium By-Laws which, to the Condominium
Board's knowledge, may then exist. The Condominium Board, when giving notice to a Unit
Owner of any such default, shall also send a copy of such notice to any Permitted Mortgagee
thereof, if so requested in writing by such Permitted Mortgagee; however, the Condominium
Board shall have no liability for any failure, through oversight or negligence, in notifying a
Permitted Mortgagee of such default by its mortgagor, provided that the Condominium Board
shall advise such Permitted Mortgagee of the default promptly after discovering such failure.

7.3     Performance by Permitted Mortgagees. The Condominium Board shall accept
payment of any sum of money or performance of any act by any Permitted Mortgagee of a Unit
Owner required to be paid or performed by such Unit Owner pursuant to the provisions of the
Declaration, these Condominium By-Laws or the Rules and Regulations, with the same force
and effect as though paid or performed by such Unit Owner.

7.4     Examination of Books. Each Unit Owner and Permitted Mortgagee shall be
permitted to examine the books of account of the Condominium upon reasonable prior notice, at
reasonable times on business days, but not more frequently than once a month.

7.5     Representatives of Mortgagees.

7.5.1     The holders of Institutional Mortgages constituting a majority of the
outstanding principal amount of all Institutional Mortgages encumbering the Suite Units may, at
their election, designate in writing to the Condominium Board a representative (the "Suite
Mortgagee Representative"), which Suite Mortgagee Representative shall be empowered to act

- 44 -

on behalf of all holders of Institutional Mortgages encumbering the Suite Units with respect to any matter requiring their consent or approval under the Declaration or these Condominium By-Laws. The holders of Institutional Mortgages constituting a majority of the outstanding principal amount of all Institutional Mortgages encumbering the Hotel Unit (or any leasehold encumbering the Hotel Unit) may, at their election, designate in writing to the Condominium Board the holder of the highest mortgage encumbering the Hotel Unit, or its designee, corporate or otherwise, as their representative (the "Hotel Mortgagee Representative"), which Hotel Mortgagee Representative shall be empowered to act on behalf of all holders of Institutional Mortgages encumbering the Hotel Unit (or any leasehold encumbering the Hotel Unit) with respect to any matter requiring their consent or approval under the Declaration or these Condominium By-Laws. The holders of Institutional Mortgages constituting a majority of the outstanding principal amount of all Institutional Mortgages encumbering the Retail Unit (or any leasehold encumbering the Retail Unit) may, at their election, designate in writing to the Condominium Board the holder of the highest mortgage encumbering the Retail Unit, or its designee, corporate or otherwise, as their representative (the "Retail Mortgagee Representative"), which Retail Mortgagee Representative shall be empowered to act on behalf of all holders of Institutional Mortgages encumbering the Retail Unit (or any leasehold encumbering the Retail Unit) with respect to any matter requiring their consent or approval under the Declaration or these Condominium By-Laws. Each of the foregoing mortgagee representatives individually are sometimes referred to herein and in the Declaration as a "Mortgagee Representative" and collectively as the "Mortgagee Representatives." If any Mortgagee Representative is so designated with respect any of said classifications of Units, and notice thereof is given to the Condominium Board, the act of such Mortgagee Representative shall be deemed binding upon the holders of all Institutional Mortgages encumbering the such classification of Units with respect to any matter requiring the consent or approval under the Declaration or these Condominium By-Laws of the applicable Mortgagee Representative. As used herein, the term "Institutional Mortgage" means any first mortgage covering a Unit or Units: (a) which is a Permitted Mortgage or a mortgage encumbering a Unit (or any leasehold estate in a Commercial Unit) then owned by Fee Owner, the Hotel Unit Owner (or any affiliate thereof), the Retail Unit Owner, the Suite Sponsor or the Club Sponsor, or their respective designee(s), and (b) the initial holder of which is: (i) Fee Owner, the Hotel Unit Owner, the Suite Sponsor or the Club Sponsor, or their respective affiliates or designee(s), (ii) a savings bank, savings and loan association, bank, trust company, insurance company, real estate investment trust or mortgage trust or other entity which is in the business of providing loans secured by hotels, retail properties or condominium units, or (iii) a Federal, state, municipal, teachers', union or corporate employee, welfare, pension or retirement fund or system.

7.5.2    Any designation of a Mortgagee Representative shall remain effective until a subsequent designation is made pursuant to the provisions hereof and notice of such subsequent designation is given to the Condominium Board.

7.5.3    In the event of any dispute with respect to the designation of a Mortgagee Representative among those holders of Institutional Mortgages entitled to designate a Mortgagee Representative as set forth above, the Condominium Board shall be entitled to rely upon any designation theretofore received until protest thereof is made to the Condominium Board in writing; and thereafter, the Condominium Board shall be entitled to, but shall have no

obligation to, make its own determination regarding the proper Mortgagee Representative based upon the information theretofore provided to it with respect to the Permitted Mortgages encumbering such Unit or Units (and/or interests) and to rely and act on such determination made in good faith until such dispute is conclusively determined by such holders of Institutional Mortgages in arbitration.

7.6     Consent of Mortgagees.  Except as otherwise expressly provided for herein or in the Declaration, no consent or approval by any mortgagee shall be required with respect to any determination or act of the Condominium Board or any Unit Owner, provided, however, that nothing contained herein shall be deemed to limit or affect the rights of any mortgagee (including any leasehold mortgagee) against its mortgagor.

## ARTICLE 8

## SELLING, LEASING AND MORTGAGING OF UNITS

### 8.1     Sales and Leases of Suite Units; Right of First Refusal For Hotel Unit Owner

8.1.1     No Suite Unit Owner (other than Fee Owner, the Hotel Unit Owner, the Hotel Operator or the Suite Sponsor, or their respective designee(s)) may sell or lease its Suite Unit except by complying with the provisions of this Article 8.  Subject to the terms of Section 8.7 hereof, each Suite Unit Owner may sell its Suite Unit, or lease its Unit for terms of not less than 14 days (except in connection with the Hotel Operation Program).

8.1.2     Subject to the terms of Section 8.8 hereof, any contract to sell a Suite Unit, together with its appurtenant Common Interest (a "Suite Sale Agreement") shall contain the following provision: "This Agreement, and the rights and obligations of the parties hereunder in respect of the transaction described herein, are hereby expressly subject to the right of first refusal of the owner of the Hotel Unit as such Unit is designated in the Declaration of Fifth and Fifty-Fifth Condominium pursuant to the terms of Article 8 of the Condominium By-Laws of such Condominium."  (The Suite Unit Owner who has entered into a Suite Sale Agreement is herein referred to as the "Offeree Suite Unit Owner" and the prospective purchaser is herein referred to as the "Outside Suite Offeror.")

(a)     Promptly after a Suite Sale Agreement has been fully executed, the Offeree Suite Unit Owner shall send written notice thereof to the Hotel Unit Owner, by certified or registered mail, return receipt requested, or by reputable courier providing overnight delivery; such notice shall be accompanied by a fully completed application package, which the Offeree Suite Unit Owner shall obtain from the Managing Agent, together with a fully executed duplicate original of the Suite Sale Agreement and any and all related agreements, containing all of the terms offered in good faith by the Outside Suite Offeror.  The giving of such notice to the Hotel Unit Owner shall constitute an offer by the Offeree Suite Unit Owner to sell its Unit, together with its appurtenant Common Interest to the Hotel Unit Owner, or its designee, upon the same terms and conditions as contained in such Suite Sale Agreement, and shall also constitute a representation and warranty by the Offeree Suite Unit Owner to the Hotel Unit Owner, that such Suite Sale Agreement is bona fide in all respects and contains the complete terms of the

transaction. The Offeree Suite Unit Owner shall promptly submit in writing such further information with respect thereto as the Hotel Unit Owner may reasonably request. Not later than 20 days after receipt of such information, the Hotel Unit Owner may elect, by sending written notice, by certified or registered mail, return receipt requested, or by nationally recognized overnight courier, to such Offeree Suite Unit Owner before the expiration of such 20 day period to purchase such Unit, together with its appurtenant Common Interest (or to cause the same to be purchased by its designee), upon the same terms and conditions as contained in the Suite Sale Agreement, as such terms and conditions may be modified or supplemented by any additional information provided by the Offeree Suite Unit Owner in response to the Hotel Unit Owner's requests for information as provided above.

(b)     If the Hotel Unit Owner shall timely elect to purchase such Unit, together with its appurtenant Common Interest, or to cause the same to be purchased by its designee, title shall close at the office of the attorneys for the Hotel Unit Owner, in accordance with the terms of the Suite Sale Agreement within 120 days after the giving of notice by the Hotel Unit Owner of its election to accept such offer. However, if the closing date of the purchase set forth in the Suite Sale Agreement shall be later than 120 days after the giving of notice by the Hotel Unit Owner of its election to accept the aforesaid offer, the Hotel Unit Owner shall be required to perform or cause to be performed all of the terms of the Suite Sale Agreement that are required to be performed by the Outside Suite Offeror (except as otherwise expressly set forth in this Article 8), including, but not limited to, payment of a downpayment or closing of title and such closing of title shall be on the date set forth in the Suite Sale Agreement as the intended closing date. If, pursuant to such Suite Sale Agreement, the Outside Suite Offeror was to assume or take title to the Unit subject to the Offeree Suite Unit Owner's existing mortgage or mortgages, the Hotel Unit Owner may purchase the Unit and assume or take title to the Unit subject to said existing mortgage or mortgages, as the case may be. At the closing, the Offeree Suite Unit Owner, if such Unit (together with its appurtenant Common Interest) is to be sold, shall convey the same to the Hotel Unit Owner, or its designee, by deed in the form required by Section 339-o of the Real Property Law of the State of New York. Real estate taxes (including water charges and sewer rents, if separately assessed), mortgage interest, if applicable, General Common Charges and rent, if applicable, shall be apportioned between the Offeree Suite Unit Owner and the Hotel Unit Owner, or its designee as of the closing date.

(c)     If the Hotel Unit Owner or its designee shall fail to accept such offer within 20 days after receipt of notice and all other documents and information to be provided under this Section 8.1.2, or waives such election in writing within such 20 day period, the Offeree Suite Unit Owner shall have until an additional 120 days after the earlier of the expiration of such 20 day period or the waiver in writing by the Hotel Unit Owner, as the case may be, to consummate the transaction set forth in the Suite Sale Agreement. In the event the Offeree Suite Unit Owner shall not, within such 120 day period (or by such later date for closing provided in the Suite Sale Agreement, as applicable), so consummate the transaction, or should the terms of the Suite Sale Agreement be amended or modified in any way (whether orally, in writing or by a side agreement) to be on terms less favorable to the Offeree Suite Unit Owner, then the Offeree Suite Unit Owner shall be required to again comply with all the terms and provisions of this Section 8.1.2. Any deed to an Outside Suite Offeror shall expressly provide that the acceptance thereof by the grantee shall constitute an assumption of all of the provisions

- 47 -

of the Declaration, these Condominium By-Laws and the Rules and Regulations, in each case as the same may be amended from time to time, and, in the absence of such express language, the same shall be conclusively deemed to have been included therein.

### 8.2 Sales and Leases of Club Units; Right of First Refusal For Club Sponsor

8.2.1     No Club Unit Owner (other than Fee Owner, the Hotel Unit Owner, the Hotel Operator or the Club Sponsor, or their respective designee(s)) may sell or lease its Club Unit except by complying with the provisions of this Article 8. Subject to the terms of Section 8.7 hereof, each Club Unit Owner may sell its Club Unit, or lease its Unit for terms of not less than 14 days (except in connection with the Hotel Operation Program or the leasing of time associated with Club Interests (as defined in the Declaration)).

8.2.2     Subject to the terms of Section 8.8 hereof, any contract to sell a Club Unit, together with its appurtenant Common Interest (a "Club Sale Agreement") shall contain the following provision: "This Agreement, and the rights and obligations of the parties hereunder in respect of the transaction described herein, are hereby expressly subject to the right of first refusal of the Club Board pursuant to the terms of Article 8 of the Condominium By-Laws of such Condominium." (The Club Unit Owner who has entered into a Club Sale Agreement is herein referred to as the "Offeree Club Unit Owner" and the prospective purchaser is herein referred to as the "Outside Club Offeror.")

(a)     Promptly after a Club Sale Agreement has been fully executed, the Offeree Club Unit Owner shall send written notice thereof to the Club Board, by certified or registered mail, return receipt requested, or by reputable courier providing overnight delivery; such notice shall be accompanied by a fully completed application package, which the Offeree Club Unit Owner shall obtain from the Managing Agent, together with a fully executed duplicate original of the Club Sale Agreement and any and all related agreements, containing all of the terms offered in good faith by the Outside Club Offeror. The giving of such notice to the Club Board shall constitute an offer by the Offeree Club Unit Owner to sell its Unit, together with its appurtenant Common Interest to the Club Board, or its designee, upon the same terms and conditions as contained in such Club Sale Agreement, and shall also constitute a representation and warranty by the Offeree Club Unit Owner to the Club Board, that such Club Sale Agreement is bona fide in all respects and contains the complete terms of the transaction. The Offeree Club Unit Owner shall promptly submit in writing such further information with respect thereto as the Club Board may reasonably request. Not later than 20 days after receipt of such information, the Club Board may elect, by sending written notice, by certified or registered mail, return receipt requested, or by nationally recognized overnight courier, to such Offeree Club Unit Owner before the expiration of such 20 day period to purchase such Unit, together with its appurtenant Common Interest (or to cause the same to be purchased by its designee), upon the same terms and conditions as contained in the Club Sale Agreement, as such terms and conditions may be modified or supplemented by any additional information provided by the Offeree Club Unit Owner in response to the Club Board's requests for information as provided above.

(b)     If the Club Board shall timely elect to purchase such Unit, together with its appurtenant Common Interest, or to cause the same to be purchased by its designee, title shall close at the office of the attorneys for the Club Board, in accordance with the terms of the Club Sale Agreement within 120 days after the giving of notice by the Club Board of its election to accept such offer. However, if the closing date of the purchase set forth in the Club Sale Agreement shall be later than 120 days after the giving of notice by the Club Board of its election to accept the aforesaid offer, the Club Board shall be required to perform or cause to be performed all of the terms of the Club Sale Agreement that are required to be performed by the Outside Club Offeror (except as otherwise expressly set forth in this Article 8), including, but not limited to, payment of a downpayment or closing of title and such closing of title shall be on the date set forth in the Club Sale Agreement as the intended closing date. If, pursuant to such Club Sale Agreement, the Outside Club Offeror was to assume or take title to the Unit subject to the Offeree Club Unit Owner's existing mortgage or mortgages, the Club Board may purchase the Unit and assume or take title to the Unit subject to said existing mortgage or mortgages, as the case may be. At the closing, the Offeree Club Unit Owner, if such Unit (together with its appurtenant Common Interest) is to be sold, shall convey the same to the Club Board, or its designee, by deed in the form required by Section 339-o of the Real Property Law of the State of New York. Real estate taxes (including water charges and sewer rents, if separately assessed), mortgage interest, if applicable, General Common Charges and rent, if applicable, shall be apportioned between the Offeree Club Unit Owner and the Club Board, or its designee as of the closing date.

(c)     If the Club Board or its designee shall fail to accept such offer within 20 days after receipt of notice and all other documents and information to be provided under this Section 8.2.2, or waives such election in writing within such 20 day period, the Offeree Club Unit Owner shall have until an additional 120 days after the earlier of the expiration of such 20 day period or the waiver in writing by the Suite Sponsor, as the case may be, to consummate the transaction set forth in the Club Sale Agreement. In the event the Offeree Club Unit Owner shall not, within such 120 day period (or by such later date for closing provided in the Club Sale Agreement, as applicable), so consummate the transaction, or should the terms of the Club Sale Agreement be amended or modified in any way (whether orally, in writing or by a side agreement) to be on terms less favorable to the Offeree Club Unit Owner, then the Offeree Club Unit Owner shall be required to again comply with all the terms and provisions of this Section 8.2.2. Any deed to an Outside Club Offeror shall expressly provide that the acceptance thereof by the grantee shall constitute an assumption of all of the provisions of the Declaration, these Condominium By-Laws and the Rules and Regulations, in each case as the same may be amended from time to time, and, in the absence of such express language, the same shall be conclusively deemed to have been included therein.

(d)     The foregoing provisions of subsection 8.2.2 shall apply only to the sale of whole Club Units (or the sale of all the Club Interests pertaining to a single Club Unit), together with the appurtenant Common Interest. The sale of Club Interests, and the respective rights and obligations of the Club Board, the Club Sponsor and the holder of any Club Interest shall be governed by the applicable provisions of the Club Declaration. In addition, notwithstanding anything herein or in the Club Declaration to the contrary, for so long as the Club Sponsor owns

any Unsold Club Interests, the rights of the Club Board as described in this Article 8 with respect to the sale of Club Units shall inure solely to the Club Sponsor (and not to the Club Board).

8.3    Any lease of a Suite Unit or Club Unit shall be consistent with these Condominium By-Laws and shall provide that it may not be modified, amended, extended or assigned without the prior consent in writing of the Condominium Board, that the tenant shall not assign its interest in such lease or sublet the demised premises or any part thereof without the prior consent in writing of the Condominium Board and that the Condominium Board shall have power to terminate such Lease and/or to bring summary proceedings to evict the tenant in the name of the landlord thereunder, in the event of: (i) a default by the tenant in the performance of its obligations under such Lease or a default by or caused by such tenant under any of the provisions of these Condominium By-Laws; or (ii) a foreclosure of the lien granted by Section 339-z of the Real Property Law of the State of New York, the Declaration, these Condominium By-Laws or otherwise.  Such lease shall also provide that it is and shall be subject and subordinate to the Declaration, these Condominium By-Laws and the Rules and Regulations.

8.4    If an Offeree Suite Unit Owner or Offeree Club Unit Owner (either, an "Offeree Unit Owner") is a corporation, any sale, assignment, transfer or other disposition of any of its stock or if an Offeree Unit Owner is a partnership, limited liability company or other entity, any sale, assignment, transfer or other disposition of any interest in such partnership, company or other entity, in each case, other than through any recognized national securities exchange or "over-the-counter" market, which results in a change in the majority beneficial or legal ownership of such entity, shall also subject the Unit owned by such entity to the requirement that the Unit first be offered to either the Hotel Unit Owner or the Club Board, as applicable, as described in this Article 8.  Any purported sale of a Unit in violation of Section 8.2 or 8.3, as applicable, shall be voidable at the election of the Hotel Unit Owner or the Club Board, as applicable, and if such party shall so elect, the Unit Owner shall be deemed to have authorized and empowered such party to institute legal proceedings to eject or evict the purported purchaser in the name of such Unit Owner as the purported seller.  Such Unit Owner shall reimburse the such party for all expenses (including, without limitation, attorneys' fees and expenses) incurred in connection with such proceedings, promptly upon demand therefor.  In no event shall any purported sale of a Unit in violation of Section 8.2 or 8.3 above release the Unit Owner who is the purported seller from any of its obligations under the Declaration or these Condominium By-Laws, whether or not such sale is voided.

8.5    No Severance of Ownership.  No Unit Owner shall execute any deed, mortgage or other instrument conveying or mortgaging title to its Unit without including therein its appurtenant Common Interest, it being the intention to prevent any severance of such combined ownership.  Any such deed, mortgage or other instrument purporting to affect one or more of such interests without including all such interests shall be deemed and taken to include the interest or interests so omitted even though the latter shall not be expressly mentioned or described therein.  No part of the appurtenant Common Interest of any Unit may be sold, conveyed or otherwise disposed of, except as part of a sale, conveyance or other disposition of the Unit to which such interests are appurtenant, or as part of a sale, conveyance or other disposition of such part of the appurtenant Common Interests of all Units.  Nothing in this Section 8.5 shall prohibit the lease of any Unit without the simultaneous lease of its appurtenant

Common Interest nor shall it prohibit the sale or mortgage of Club Interests (as defined in Article 27 of the Declaration).

8.6     Certificate of Termination of Right of First Refusal. A certificate executed and acknowledged by an authorized representative of the Hotel Unit Owner stating that the provisions of Section 8.1 or Section 8.2 hereof, as the case may be, have been satisfied by a Unit Owner or stating that the right of first refusal contained therein has been duly released or waived by the Hotel Unit Owner and that, as a result thereof, the rights of the Hotel Unit Owner thereunder have terminated, shall be conclusive upon such party, the Condominium Board and the Unit Owners in favor of all persons who rely on such certificate in good faith.

8.7     Exceptions. In addition to any other exceptions herein before set forth, the provisions of Sections 8.1.2, 8.2.2 and 8.4 shall not apply to the sale or conveyance of any Unit, together with its appurtenant Common Interest: (a) by the Unit Owner thereof to his or her spouse, domestic partner, adult children, parents, adult siblings or to any combination of them, or to a trust for the benefit of any one or more of them and/or any one or more minor children of any of them (collectively, "family members"), or to any affiliate (an "affiliate" being defined as for purposes hereof as a person or entity directly controlling, controlled by or under common control with such other person or entity; and "control" meaning the ownership of more than 50% of the interests in such entity and possession of the power to direct the management and policies of such entity and the distribution of its profits) of such Unit Owner; (b) by the Unit Owner of any Unsold Unit with respect to such Unsold Unit; (c) the Condominium Board; (d) any proper officer conducting the sale of a Unit in connection with the foreclosure of a mortgage or other lien covering such Unit or delivering a deed in lieu of such foreclosure; (e) a Permitted Mortgagee or its nominee, who has acquired title to any Unit at any foreclosure sale of its Permitted Mortgage or by deed in lieu of such foreclosure delivered in a bona fide transaction; provided, however, that each succeeding Unit Owner shall be bound by, and its Unit shall be subject to, all of the provisions of this Article 8 (unless otherwise qualifying for one of the exceptions set forth in this Section 8.7). In addition, the provisions of Sections 8.1 and 8.2 shall not apply to: (i) any lease, sale or conveyance of a Suite Unit or Club Unit to a Permitted Mortgagee or a purchaser at a foreclosure sale of a Permitted Mortgage in connection with a foreclosure or sale in lieu of same; (ii) any lease, sale or conveyance of a Commercial Unit or any part thereof, together with its Common Interest; or (iii) any lease, sale or conveyance of any Club Interest in respect of a Club Unit (which shall be instead subject to any applicable terms and conditions therefor set forth in the Club Declaration).

8.8     Gifts, Devises and Intestate Transfers. Any Unit Owner shall be free to convey or transfer his or her Unit by gift, or may devise his or her Unit by will, or have his or her Unit pass by intestacy, without complying with the provisions of Sections 8.1.2 and 8.2.2, provided, however, that each succeeding Unit Owner shall be bound by, and his or her Unit shall be subject to, the provisions of this Article 8.

8.9     Waiver of Right of Partition with Respect to Units Acquired on Behalf of Unit Owners as Tenants-in-Common. In the event that any Unit shall be acquired by the Condominium Board or its designee, on behalf of all Unit Owners, as tenants-in-common, all

such Unit Owners shall be deemed to have waived all rights of partition with respect to such acquired Unit and the entire Property as herein provided.

8.10    Payment of Assessments. No Unit Owner shall be permitted to sell, convey, mortgage, pledge or hypothecate its Unit unless and until it shall have paid in full to the Condominium Board all unpaid General Common Charges and other amounts required by the Condominium Board to be paid and theretofore assessed by the Condominium Board against such Unit and until such Unit Owner shall have satisfied all unpaid liens against its Units, other than Permitted Mortgages. Each Unit Owner shall notify the Managing Agent at least five business days prior to the closing of any of the aforementioned transactions for confirmation of any unpaid amounts.

8.11    Mortgage of Units. Subject to Article 7 and Section 8.10 hereof, each Unit Owner shall have the right to mortgage its Unit without restriction.

8.12    Lease Rider. In addition to any other applicable provisions and restrictions contained in the Declaration, these Condominium By-Laws and the Rules and Regulations with respect to the lease of any Suite Unit or Club Unit, every such lease shall be required to have annexed to it and include a Unit Lease Rider (in form and substance as may be determined by the Condominium Board from time to time). All leases (in respect of all or any part of a Unit) entered into after the date of the establishment of the Condominium and any renewals, extensions, modifications, amendments, sublets or assignments thereof, or of any existing lease, after such date, shall include the Unit Lease Rider; and no subsequent extension, modification or amendment of any such lease or of any existing lease may change the terms of the Unit Lease Rider once it has been so incorporated. The foregoing requirements shall also apply regardless of whether the lease or existing lease in question is to an affiliate or other party related to the leasing Unit Owner. The initial form of Unit Lease Rider shall include, subject to the right of the Condominium Board in its sole discretion to amend, modify, supplement or delete any of such requirements:

(a)    Requirement of at least 5 business days prior written notice of the rental to the Hotel Operator, including the identity of the renter, the times of arrival and departure and, if daily housekeeping is an optional service as opposed to a mandatory service, whether the renter will be receiving housekeeping services.

(b)    Renter must present credit card on arrival to front desk for use of hotel a la carte services and, if applicable, housekeeping service.

(c)    Lease agreement addendum must advise renter in clear terms that: (i) the renter is renting a particular Unit from a private party rather than from the Hotel Operator; (ii) since the rental is not arranged through the Hotel Operator, the Hotel Operator has no authority to relocate the renter to another room/suite or adjust rental charges or length of stay; (iii) rent must be paid to the owner of the Unit; (iv) a la carte services are payable to the Hotel Operator directly; and (v) housekeeping services and provision of in-room consumables such as soaps, shampoos, etc, are only provided with the purchase of daily housekeeping services at the rates established from time to time by the Hotel Operator.

## ARTICLE 9

## CONDEMNATION

9.1     In the event of the taking in condemnation or by eminent domain of all or any part of the Common Elements, then, subject to the provisions set forth below, the Condominium Board will arrange for the prompt repair and restoration of the part of the Common Elements affected by such taking.  The award made for any such taking shall be payable to the Condominium Board, provided, however, that if any such award exceeds $10,000,000, such award shall be payable to the Insurance Trustee (as defined in Section 12.7 hereof) and shall be disbursed to the contractors engaged in such repair and restoration, if any, in appropriate progress payments.  If the net proceeds of any such award are insufficient to cover, or if such net proceeds exceed, the cost of any repairs and restorations, the deficit or surplus, as the case may be, will be borne and shared by all Unit Owners with respect to any taking of Common Elements pro rata in accordance with their respective Common Interest percentages (but excluding the Retail Unit and its Common Interest in matters relating to the Hotel Limited Common Elements) provided, that the amount of any surplus payable to any Unit Owner shall be lessened by such amounts as may be necessary to reduce unpaid liens (other than mortgages which are not Permitted Mortgages) on any such Unit in the order of the priority of such liens. Notwithstanding any provisions contained herein to the contrary, if 75% or more of the Hotel Limited Common Elements and/or General Common Elements, in the aggregate, are so taken, such repairs or restorations shall not be made unless 75% or more of all affected Unit Owners (including Fee Owner, the Suite Sponsor and the Club Sponsor, and their respective designee(s), if they shall then own any Units), in aggregate Common Interests, shall promptly resolve to proceed with the same.  In the event that a sufficient number of Unit Owners (based upon Common Interest) shall so resolve, the repairs and restoration shall be performed as set forth above.  Conversely, in the event that a sufficient number of Unit Owners (based upon Common Interest) shall either fail or refuse to so resolve, the repairs and restoration shall not be performed and, subject to Article 20 of the Declaration, the Property shall be subject to an action for partition by any Unit Owner or lienor, as if owned in common, in which event the net proceeds of the sale, and net proceeds of any condemnation awards shall be divided among all Unit Owners in proportion their respective Common Interests, provided, however, that no payment shall be made to a Unit Owner until there has first been paid out of its share of such funds, such amounts as may be necessary to discharge all unpaid liens on its Unit (other than mortgages which are not Permitted Mortgages) in the order of the priority of such liens.  As used in this Article 9, the words "promptly resolve" shall mean not more than 120 days after the date notice is given of such taking.  Any dispute between the Condominium Board and a Unit Owner under this Article 9 shall be settled by Arbitration (as provided in Article 11).

## ARTICLE 10

## RECORDS AND AUDITS

10.1     Records.  The Condominium Board (or the Managing Agent) shall keep detailed records of the actions of the Condominium Board, minutes of the meetings of the Condominium Board, minutes of the meetings of the Unit Owners, and financial records and books of account

- 53 -

with respect to the activities of the Condominium Board, including a listing of all receipts and expenditures. In addition, the Condominium Board shall keep a separate account for each Unit which, among other things, shall contain the amount of each assessment of General Common Charges and other amounts required by the Condominium Board to be paid in respect of each such Unit, the date when due, the amounts paid thereon and the balance, if any, remaining unpaid.

10.2    Audits. Within four months after the end of each fiscal year, an annual report of receipts and expenditures, prepared and certified by an independent certified public accountant or an independent certified public accounting firm, shall be submitted by the Condominium Board to all Unit Owners, and to all Permitted Mortgagees of Units, who have requested the same in writing. The cost of such report submitted by the Condominium Board shall be paid by the Unit Owners as a Common Expense.

10.3    Availability of Documents. Copies of the Declaration, these Condominium By-Laws, the Rules and Regulations and the Floor Plans, as the same may be amended from time to time, shall be maintained at the office of the Condominium Board and shall be available for inspection by Unit Owners and their authorized agents during reasonable business hours and upon reasonable prior notice.

## ARTICLE 11

## ARBITRATION

11.1    General Procedure. Except as may otherwise be expressly provided in these Condominium By-Laws or the Declaration, any arbitration provided for in these Condominium By-Laws or the Declaration ("Arbitration") shall be conducted before one arbitrator in New York City by the American Arbitration Association or any successor organization thereto, in accordance with its rules then in effect; the decision rendered in such Arbitration shall be binding upon the parties and may be entered in any court having jurisdiction; provided that, in the case of Arbitration of issues arising under Section 6.4 and 6.5, any arbitrator shall be a real estate professional, having 10 or more years experience in the field of luxury hotels and/or hotel condominiums in each case located in Manhattan. In the event that the American Arbitration Association shall not then be in existence and has no successor, any Arbitration hereunder shall be conducted in New York City before one arbitrator appointed, on application of any party, by any justice of the highest court of appellate jurisdiction located in the County of New York. The decision of the arbitrator so chosen shall be given within 10 days after his or her appointment.

11.2    Costs and Expenses. The fees, costs and expenses of the arbitrator shall be borne by the losing party in the Arbitration or, if the position of neither party to a dispute shall be substantially upheld by the arbitrator, such fees, costs and expenses shall be borne equally by the parties to the dispute. Each disputant shall also bear the fees and expenses of its counsel and expert witnesses. Subject to the foregoing, all costs and expenses paid or incurred by the Condominium Board in connection with any Arbitration held hereunder (including, without limitation, the fees and expenses of counsel and expert witnesses) shall constitute General Common Expenses.

11.3    Agreement by Parties. The parties to any dispute required or permitted to be submitted to Arbitration hereunder may, by mutual agreement between them, vary any of the provisions of Section 11.1 with respect to the Arbitration of such dispute, or may agree to resolve their dispute in any other manner, including, without limitation, the manner set forth in Section 3031 of the New York Civil Practice Law and Rules and known as the "New York Simplified Procedure for Court Determination of Disputes."

## ARTICLE 12

## MISCELLANEOUS

12.1    Consents. Wherever the consent, approval or satisfaction of any of the Suite Sponsor, the Club Sponsor or their respective designee(s) is required under these Condominium By-Laws or the Declaration, such consent, approval or satisfaction shall not be required when such party no longer owns any Unsold Units. Wherever the consent, approval or satisfaction of Fee Owner or its designee(s) is required under these Condominium By-Laws or the Declaration, such right of consent, approval or satisfaction shall automatically be transferred and inure to and devolve upon any successor of Fee Owner as the Unit Owner of all or substantially all of the Hotel Unit.

12.2    Waiver. No provision contained in these Condominium By-Laws or the Rules and Regulations shall be deemed to have been abrogated or waived by reason of any failure to enforce the same, regardless of the number of violations or breaches thereof which may occur.

12.3    Captions. The index hereof and captions herein are inserted only as a matter of convenience and for reference, and in no way define, limit or describe the scope of these Condominium By-Laws nor the intent of any provision hereof.

12.4    Conflict. In the event the provisions of these Condominium By-Laws or the provisions of the Rules and Regulations conflicts with the provisions of the Declaration, the provisions of the Declaration shall control.

12.5    Certain References.

12.5.1    A reference in these Condominium By-Laws to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context otherwise requires.

12.5.2    The terms "herein," "hereof" or "hereunder" or similar terms used in these Condominium By-Laws refer to these Condominium By-Laws in their entirety and not to the particular provision in which the terms are used.

12.5.3    Unless otherwise stated, all references herein to Articles, Sections, subsections, subparagraphs or other provisions are references to Articles, Sections or other provisions of these Condominium By-Laws.

- 55 -

12.5.4    Unless otherwise expressly stated herein to the contrary, all references herein to dollar amounts shall be adjusted from time to time, after the date the Declaration is recorded, to reflect any increase in the cost of living, as reflected by an increase in the CPI Increase Factor.  The term "CPI Increase Factor" as used herein shall mean an increase proportionate to any increase in the cost of living from and after January 1, 2004, as reflected by the change in the Consumer Price Index (CPI-U; All Items; 1982-84 = 100 standard reference base period) for New York, New York (or the smallest measured area including New York, New York), as published by the Bureau of Labor Statistics, United States Department of Labor or, if the same ceases to be published, a commonly used substitute therefor reasonably selected by the Condominium Board.

12.6    Severability.  Subject to the provisions of the Declaration, if any provision of these Condominium By-Laws is invalid or unenforceable as against any person, party or under certain circumstances, the remainder of these Condominium By-Laws and the applicability of such provision to other persons, parties or circumstances shall not be affected thereby.  Each provision of these Condominium By-Laws shall, except as otherwise herein provided, be valid and enforced to the fullest extent permitted by Law.

12.7    Insurance Trustee.  The Insurance Trustee shall be a bank or trust company having an office located in the City of New York, designated by the Condominium Board and having a capital surplus and undivided profits of $500,000,000 or more.  In the event the Insurance Trustee resigns or is replaced by the Condominium Board, the Condominium Board shall appoint a new Insurance Trustee which shall be a commercial bank or trust company having an office located in The City of New York and having a capital surplus and undivided profits of $500,000,000 or more, subject to increase by the CPI Increase Factor.  The Condominium Board shall pay the fees and disbursements of any Insurance Trustee and such fees and disbursements shall constitute a General Common Expense.  The Insurance Trustee shall hold all such proceeds in accordance with Section 254(4) of the Real Property Law of the State of New York.

12.8    Unit Owner or Affiliate Acting as Managing (or other) Agent.  Whenever any Unit Owner, acting in its own behalf or through an affiliate, acts on behalf of the Condominium or the Unit Owners generally, in its capacity as Managing Agent, or pursuant to another management agreement or in a similar contractual capacity, the rights, obligations and liabilities of such Unit Owner with respect to such actions shall be governed by the terms and limitations of the applicable agreement(s), which may, among other things, limit such liability to the extent arising in the course of performance of its duties, other than due to its/their gross negligence or willful misconduct.

## ARTICLE 13

## AMENDMENTS TO CONDOMINIUM DOCUMENTS

13.1    Amendments by Unit Owners.

13.1.1    Subject to the provisions contained herein or in the Declaration with respect to amendments, modifications, additions or deletions affecting Fee Owner, the Suite Sponsor, the Club Sponsor, any Unsold Units, or one or more of the Commercial Units or Commercial Unit Owners and except as may otherwise be provided in the Declaration and these Condominium By-Laws, any provision of the Declaration, these Condominium By-Laws or the Rules and Regulations affecting only the: (a) Suite Units or the Suite Unit Owners (and no other Unit, Unit Owner, the Hotel Operator, the Condominium Board, the Managing Agent or any of the Common Elements), may be amended, modified, added to or deleted by the affirmative vote of at least 66-2/3% in Common Interest of all Suite Unit Owners; provided, however, that the same shall not be effective without the prior written consent (which consent shall not be unreasonably withheld or delayed) of the Suite Mortgagee Representative, if any; (b) Club Units or the Club Unit Owners (and no other Unit, Unit Owner, the Hotel Operator, the Condominium Board, the Managing Agent or any of the Common Elements), may be amended, modified, added to or deleted by the affirmative vote of at least 66-2/3% in Common Interest of all Club Unit Owners; provided, however, that the same shall not be effective without the prior written consent (which consent shall not be unreasonably withheld or delayed) of the Club Board; (c) Commercial Units, or the Commercial Unit Owners may be amended, modified, added to or deleted by the affirmative vote of 66-2/3% in Common Interest of all Commercial Unit Owners; provided, however, that the same shall not be effective without the written consent (which consent shall not be unreasonably withheld or delayed) of the Hotel Mortgagee Representative, if any; and (d) General Common Elements or more than one class of Unit Owners, may be amended, modified, added to or deleted by affirmative vote of at least 66-2/3% in Common Interest of all Unit Owners; provided, however, that so long as Mortgagee Representatives represent Permitted Mortgages encumbering Unit(s) representing at least 50% of the total Common Interests (only) of all Units, the same shall not be effective without the written consent (which consent shall not be unreasonably withheld or delayed) of the Mortgagee Representatives and if the consent of the Hotel Mortgagee Representative, if any, shall be given, the consent of the Retail Mortgagee Representative, if any, shall not be required; and provided in each of the foregoing cases, however, that the permitted use(s) of a Unit or the Common Interest appurtenant to each Unit as expressed in the Declaration shall not be altered without the written consent of all Unit Owners affected thereby (and for the foregoing purposes, any change in the permitted use of the Suite Units or Club Units shall be deemed to materially affect the Hotel Unit). For the avoidance of doubt, by way of illustration and not as a limitation, provisions concerning the permitted uses of the Units, or the alteration, repair and maintenance of the Units are deemed to affect more than solely the Unit or category of Unit in question.

13.1.2    Subject to the provisions contained herein or in the Declaration with respect to amendments, modifications, additions or deletions affecting Fee Owner, the Suite Sponsor, the Club Sponsor or their respective designee(s), any Unsold Units, or the Commercial Units or the Commercial Unit Owners, each duly adopted  amendment, modification, addition or

deletion to the Declaration and Condominium By-Laws, shall be executed by the Condominium Board, as attorney-in-fact, coupled with an interest, for the Suite Unit Owners, the Club Unit Owners, the Commercial Unit Owners or all Unit Owners, as the case may be, and the Condominium Board is hereby authorized by such Unit Owners so to act as their attorney-in-fact and shall be effectuated by an instrument recorded in the City Register's Office and the same shall not be effective until so recorded.

13.2     Amendments Affecting Certain Parties. Notwithstanding any provision contained herein to the contrary, no amendment, modification, addition to or deletion of any of the provisions of the Declaration, these Condominium By-Laws or the Rules and Regulations shall be effective in any way against Fee Owner, the Suite Sponsor, the Club Sponsor or their respective designee(s), for so long as any such party is the owner of one or more Unsold Units, unless such party has given its prior written consent thereto. In addition, no such amendment, modification, addition or deletion may be made in any manner which adversely affects a Commercial Unit or a Commercial Unit Owner or the rights, benefits, easements, privileges or exemptions of such Commercial Unit Owner, without the consent of the affected Commercial Unit Owner.

13.3     Amendments Affecting Permitted Mortgagees. Notwithstanding any provision contained herein to the contrary, no amendment, modification, addition to or deletion of Sections 6.1, 6.2.2 or 6.4, Article 7, or clauses (d) and (e) and the second sentence of Section 8.7 of these Condominium By-Laws shall be effective as against the holder of any Permitted Mortgage theretofore made unless such holder (or the Mortgagee Representative for such applicable class of Units) has given its prior written consent thereto, which consent shall not be unreasonably withheld or delayed.

13.4     Deemed Approval Provision. Notwithstanding anything to the contrary contained herein, if any Unit Owner is notified in writing by the Condominium Board or by any party entitled under the Condominium Documents to give such notice that its consent to a proposed amendment or modification to the Declaration, these Condominium By-Laws or the Rules and Regulations is requested, then, provided that such notice contains a copy of the proposed amendment or modification (and a statement in bold capital letters to the effect that if such Unit Owner does not notify the sending party in writing within ten (10) Business Days after such Unit Owner receives such notice (together with a copy of such amendment or modification), that such Unit Owner disapproves such proposed amendment or modification, then such Unit Owner shall be deemed to have approved such amendment or modification), if such Unit Owner does not notify the sending party in writing within ten (10) Business Days after such Unit Owner receives such notice (together with a copy of such amendment or modification), that such Unit Owner disapproves such proposed amendment or modification, then such Unit Owner shall be deemed to have approved such amendment or modification. The provisions of this Section 13.4 shall not apply to notices given to Fee Owner, the Commercial Unit Owners, the Suite Sponsor, the Club Sponsor (or their respective designees) or any other holder of Unsold Units requesting any such party's consent to a proposed amendment or modification.

13.5     Consents of Sponsor and/or the Commercial Unit Owners. The provisions of this Article 13 may not be modified, amended, added to or deleted, in whole or in part, without the consent of Fee Owner, the Hotel Unit Owner, the Suite Sponsor or the Club Sponsor (or their respective designees) or any other holder of Unsold Units.

## EXHIBIT A

### TABLE OF DEFINITIONS

Allocable Hotel Expenses:  As defined in 6.2.4 of the By-Laws.

Alteration:  As defined in Section 2.2.2(a) of the By-Laws.

Board Member:  As defined in Section 2.3.1 of the By-Laws.

Club Board Member:  As defined in subsection 2.3.1(iii) of the By-Laws.

Club Offering Plan: means that certain offering plan, initially accepted for filing by the Office of the Attorney General of the State of New York as of February ___, 2006, in connection with the offering of Club Interests in the Club Units, together will all amendments to such plan made from time to time.

Club Sponsor:  St. Regis Residence Club, New York Inc., or its successors and assigns, as the sponsor of the sale of Club Interests under the Club Offering Plan.

Club Unit:  means any Unit from time to time designated as a Club Unit in the Declaration.  All such Club Units are collectively, referred to as the "Club Units."

Commercial Board Member:  As defined in subsection 2.3.1(i) of the By-Laws.

Commercial Limited Common Element:  means a Limited Common Element for the benefit of any Commercial Unit Owner(s).  As of the initial recording of the Declaration, there are no Commercial Limited Common Elements.

Commercial Unit:  Any Unit designated in the Declaration as a Commercial Unit (initially, the Hotel Unit and the Retail Unit), as the same may be subdivided or combined in accordance with the Declaration and/or By-Laws. All or any of such Units are collectively referred to as the "Commercial Units."

Commercial Unit Owner:  An owner of any Commercial Unit at the time in question.

Common Interest:  Subject to the terms of the Declaration, the proportionate undivided interest in fee simple absolute in the Common Elements appertaining to each Unit, expressed as a numerical percentage and determined in accordance with the Declaration.  The total of all Common Interest percentages appertaining to all Units equals 100%.

Cost Allocation Schedule:  As defined in Section 6.1.1 of the By-Laws.

CPI Increase Factor:  As defined in Section 12.5.4 of the By-Laws.

Environmental Laws:  As defined in Section 6.12.3 of the By-Laws.

First Annual Meeting:  As defined in Section 3.1 of the By-Laws.

First Closing: The first to occur of the First Suite Closing or the First Club Closing.

First Club Closing: The first date upon which title with respect any Club Interest in a Club Unit is conveyed to a purchaser thereof under the Club Plan.

First Suite Closing: The first date upon which title to any Suite Unit is conveyed to a Purchaser under this Plan.

General Common Expenses: As defined in Section 6.1.1 of the By-Laws.

Hazardous Materials: As defined in Section 6.12.3 of the By-Laws.

Majority of Unit Owners: As defined in Section 3.9 of the By-Laws.

Managing Agent: As defined in Section 2.2.4 of the By-Laws.

Permittee(s): the Persons (including the officers, directors, employees, agents, contractors, subcontractors, customers, vendors, suppliers, visitors, invitees, licensees, tenants, subtenants, and concessionaires of any Unit Owner or Board, or of any Occupant) who are, at any given time, in a Unit Owner's Unit, Area, Residential Section, Exclusive Use General Common Element or Residential Limited Common Element (to the extent under such Residential Limited Common Element is under its/his/her exclusive control pursuant to the applicable Residential By-Laws, as applicable), in each case as the context requires.

Repair: As defined in Section 2.2.2(a) of the By-Laws.

Suite Board Member: As defined in subsection 2.3.1(ii) of the By-Laws.

Suite Mortgagee Representative: As defined in Section 7.5.1 of the By-Laws.

Suite Offering Plan: means that certain offering plan, initially accepted for filing by the Office of the Attorney General of the State of New York as of February ___, 2006, in connection with the offering of the Suite Units, together will all amendments to such plan made from time to time.

Suite Sponsor: Fifth Avenue Hotel Suites LLC, or its successors and assigns, as the sponsor of the sale of Suite Units under the Suite Offering Plan.

Suite Unit: means any Unit from time to time designated as a Suite Unit in the Declaration. All such Suite Units are collectively, referred to as the "Suite Units."

Zoning Resolution: Zoning Resolution of The City of New York, effective as of December 15, 1961, as the same has been and hereafter may be amended from time to time.

KL3 2411571.10